# CHARLESTON.

## MAPEL *v.* JOHN.

Submitted February 1, 1896—Decided April 1, 1896.

1. COAL MINING—CONSTITUTIONAL LAW—INJURY.

    Section 7 of chapter 79 of the Code is as follows: "No owner or tenant of any land containing coal shall open or sink, or dig, excavate or work in any coal mine or shaft, on such land, within five feet of the line dividing said land from that of another person or persons, without the consent, in writing, of every person interested in, or having title to, such adjoining lands in possession, reversion or remainder, or of the guardians of any such persons as may be infants. If any person shall violate this section, he shall forfeit five hundred dollars to any person injured thereby who may sue for the same." This statute is constitutional, and by the term "injury" means the wrong done the party by the violation of the statute.

2. STATUTORY PENALTIES—ACTION—TRESPASS ON THE CASE.

    The penalty prescribed may be recovered by the person injured in an action of trespass on the case in the form set forth in the opinion.

3. PLEADING—DEMURRER TO EVIDENCE—EVIDENCE.

    Plaintiff or defendant may demur to the evidence, and the demurrant must set out the whole evidence; and the court, unless it be plainly against the demurrant, and appears to be resorted to only for delay, should compel the other party to join in the demurrer without requiring the demurrant to make on the record any admission of inferences of fact; but it is for the court to deduce all inferences fairly deducible from the evidence demurred to.

4. PLEADING—DEMURRER TO EVIDENCE—EVIDENCE.

    By demurring to evidence the demurrant is now, under section 9 of chapter 131, not held to waive any part of his competent evidence; but where it conflicts with that of the other party it will be regarded as overborne, unless it manifestly appears to be clearly and decidedly preponderant. He admits the credit of the evidence demurred to, and all inferences of fact that may be fairly deducible from the evidence, but only such facts as are fairly deducible; and refers it to the court to deduce such fair inferences.

5. STATUTORY PENALTIES—VERDICT.

It is not necessary for the jury to find any hypothetical verdict for damages where, as in a case like this, the action is on a statute, and only for a forfeiture or penalty definitely prescribed thereby.

6. STATUTORY PENALTIES—ACTION—DEBT.

Where, as in this case, the statute prescribes the penalty or the sum to be forfeited, but not the form of action, debt will lie; or the form of action may be such as the particular nature of the wrong or injury may require.

7. STATUTORY PENALTIES—DAMAGES.

Any person injured by the violation of a statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of damages. Section 7, chapter 103, Code.

OKEY JOHNSON and L. V. KECK for plaintiff in error, cited Code, c. 79, s. 7; 5 W. Va. 510; 10 W. Va. 794; 3 Gratt. 562; 3 Dall. 386; 41 Barb. 329; 19 Mo. App. 75; 51 N. J. Eq. 316; 98 N. Y. 98; 13 Wall. 166; 90 N. Y. 48; 67 Ill. 37; 21 W. Va. 534; 31 W. Va. 710; 152 U. S. 133; 113 U. S. 27; 56 Fed. Rep. 352; 15 S. E. Rep. 723; 9 S. E. Rep. 328; 17 S. E. Rep. 134; 137 U. S. 86; 12 L. R. A. 51; 10 L. R. A. 178; 18 L. R. A. 440; 123 U. S. 623; 21 W. Va. 782.

GEO. C. STURGISS and COX & BAKER for defendant in error, cited Code, c. 79, s. 7; 1 Chitty, Pl. (12th Ed.) 142, 171, 96, n. 3; 4 Johns. 457, 458; Code, c. 103, s. 7; 1 Elliott, Gen. Prac. § 300; Pomeroy, Rem. & R. Rights, § 568; 6 Cranch, 226; 58 N. Y. 630; 3 Greenl. (Ia.) 599; 16 Cal. 574; 3 Dana (Ky.) 550; 5 W. Va. 85-94; 8 W. Va. 612; Acts, 1833-4, c. 70; Const. Art. I, s. 2; Id. Art. II, s. 2; Id Art. III, s. 2; Id. Art. III, s. 3; Id. Art. V, s. 1; Id. Art. VI, s. 1; Acts, 1882, c. 70; Acts, 1891, c. 82; 15 Am. & Eng. Enc. Law, 585 notes, 593 n. 3; 77 Ill. 640; 66 Pa. St. 99; Cooley, Const. Lim. (3rd. Ed.) 358, 390, 394, note 583; 7 Cush. 84; 27 Vt. 149; 1 Allen, 552; 4 Allen, 198; 6 Ga. 1; 2 La. An. 329; 2 Yeates, 493; 11 Mich. 425; 7 Cush. 53; 11 Met. 55; 28 N. E. Rep. 76; 3 N. Y. Sup. 777; 12 N. Y. Sup. 536; 58 Hun, 610; 43 La. Ann. 275; 111 N. Y. 359; 38 Fed. Rep. 552; 32 Fed. Rep. 722, 849; 113 U. S. 27; 116 U. S. 307.

HOLT, PRESIDENT:

This is a writ of error by defendant, John, to a judgment rendered in an action of trespass on the case against him by the Circuit Court of Monongalia county on the 20th day of June, 1894, in favor of plaintiff, Mapel, on his demurrer to the evidence for the penalty of five hundred dollars prescribed by the following statute: "No owner or tenant of any land containing coal shall open or sink, or dig, excavate or work in any coal mine or shaft, on such land, within five feet of the line dividing said land from that of another person or persons, without the consent, in writing, of every person interested in, or having title, to such adjoining lands in possession, reversion, or remainder, or of the guardians of any such persons as may be infants. If any person shall violate this section, he shall forfeit five hundred dollars to any person injured thereby who may sue for the same." Code 1891, p. 668, c. 79, s. 7.

The defendant, by counsel, assigns the following errors: "(1) The overruling the demurrer to the original and amended declaration. (2) In refusing to require the plaintiff to elect whether he would proceed for common law or statutory damages. (3) In refusing to set aside the verdict and grant a new trial. (4) In refusing to arrest said judgment because the declaration contained no count under the statute for the forfeiture. (5) In entering a judgment for plaintiff on said demurrer to evidence."

As the declaration demurred to is based upon a statute of great practical interest in this state, therefore it may answer a useful purpose to give the last count in full, which is as follows: "And for that the plaintiff heretofore, to wit, on the 1st day of January, 1892, at the county aforesaid, was possessed and the owner in fee simple of a certain other tract of land in Cass district, in said county, containing ———— acres, more or less, and under and upon which there was and is a large and valuable vein of bituminous coal; and the said defendant during all the time aforesaid was and still is possessed and the owner in fee simple of a certain tract of land in said county and district, and adjoining the said tract of the said plaintiff, and under and upon which said last mentioned tract the said vein of coal con-

tinues and thereunder remains along and under the boundary and division line between the said tracts; and the plaintiff and defendant being so respectively possessed of the said tracts, the said defendant, to wit, on the 1st day of April, 1892, opened the said vein of coal on his said tract, near to the boundary and division line between the said tracts, and then and there unlawfully, wrongfully, and contrary to the statute in such cases made and provided, did open, dig, excavate, work, and remove the said vein of coal up to the said boundary and division line between said tracts without the consent of the plaintiff in writing or otherwise; by reason of which wrongful and unlawful act of the said defendant the plaintiff was injured and damaged five hundred dollars, and the said defendant thereby became and was and is liable to the plaintiff in the said sum of five hundred dollars, and to the damage of the plaintiff five hundred dollars; and therefore he sues," *etc.*

The declaration contained three counts. The first one may be said to be a common-law count in trespass on the case for the damages sustained, case being used instead of trespass, as authorized by statute (section 8, chapter 103). The second count is like the third count given above, with the additional averment that the opening was extended across the dividing line. By the statute sued on the penalty of five hundred dollars is given to the party injured. No part of it goes to the state, so that the action would not be in the name of the state. See Code, c. 36. The first act was passed on the 3rd day of March, 1834. The action of debt was prescribed. Acts 1833-34, p. 82. No specific mode of recovery is provided by the statute sued on, and therefore an action of debt lies, being the usual remedy. *West* v. *Rawson*, 40 W. Va. 48 (21 S. E. 1019); *Sims* v. *Alderson*, 8 Leigh, 479; 1 Chit. Pl. (16th Am. Ed.) top page 125, and cases cited. But in such case, where the statute gives a right of action without prescribing the form, the action is to be adapted to the nature of the case, and modeled according to the distinctions of the common-law. It may be an action of debt, *assumpsit*, trespass, or case, as the particular nature of the wrong or injury may require. *Bullard* v. *Bell*, 1 Mason, 243, 290 (Fed. Cas. No. 2,121); Com. Dig.; 3 Rob. Prac. 383.

Any person injured by the violation of a statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of damages. Code, s. 7. c. 103. This, however, does not of itself give the right of joining a suit for such damages with a count for the penalty. But in this case the court virtually instructed the jury to disregard the first count, and, judgment being given only for the penalty, the question of the addition of the first or faulty count does not arise. Code, c. 131, s. 13.

The court did not err in refusing to require plaintiff to elect between the two counts, for the reason already given. Such election could not be made, as the court instructed the jury to disregard the first count, and to find conditionally the penalty fixed by the statute. In this case, therefore, there was no occasion for the jury to find any verdict at all. All that was needed was for the evidence on each side to be set forth in the demurrer, as it is required to be certified under section 9 of chapter 131; and the court, in deciding the demurrer, would give judgment for defendant or for plaintiff, and, if for the latter, it would be for the penalty of five hundred dollars fixed by the statute. Generally, where the damages are to be assessed, the jury is not discharged, but find a verdict subject to the decision of the court on the demurrer. Either party, plaintiff or defendant, has a right to demur to the evidence, and the other party will be required to join therein, unless the case be plainly against the demurrant, and his object in demurring clearly seems to be nothing else but delay. If the court, in considering the demurrer, is of the opinion that plaintiff has cause of action, but that the damages are excessive, the verdict may be set aside, and a writ of inquiry be awarded; and so in every case, where the court, if it followed the hypothetical verdict, must render what the evidence contained in the demurrer shows to be an unjust judgment, it may set the verdict aside, and call another jury to ascertain the quantum of recovery (see 4 Minor, Inst. pt. 1. pp. 831, 832, and cases cited); or it may, for good cause, set aside the conditional verdict, and award a new trial. I think the

practice with us is to treat the party demurring with common fairness; not to draw any unreasonable or far fetched inferences against him, or for his adversary, nor to restrict him to what may be called "necessary inferences" in his favor. See *Hansbrough* v. *Thom*, 3 Leigh, 147. Of course, in a case of conflict, the fact must be taken against him, unless overthrown by a clear and decided preponderance of evidence; but, thus treated, he assumes no risk but what is fair in such a case, and what he ought in reason to anticipate; nor is it more than he assumes on a motion for a new trial. It tends to promote the fair and speedy administration of justice without being subject to the charge of encroaching upon the province of the jury; for it is as old as jury trial itself.

It so happened in this action for the recovery of the one definite penalty prescribed by the statute in the given case that there was no room for the verdict of a jury. Such verdict was wholly useless. But, as they followed the statute, it could do no harm; therefore there was nothing for the court to set aside, and there could be no substantial error to the prejudice of either party in refusing to set it aside; yet the court, on proper showing, might have awarded a trial *de novo*.

The question whether the plaintiff had sustained any injury in the sense in which the term "injury" is used in the statute could not, in the nature of things, have been submitted to or found by the jury. It was a matter of evidence, with which, in this particular case, they had nothing to do. Moreover, the term "injury," as used in the statute, is used to indicate that the person whose right has thus been violated is the proper one to sue for the penalty; not that the amount of damages is to be ascertained by the jury, for the statute itself fixes the sum forfeited at five hundred dollars, and means in this case the violation of his right by reason of the violation of the statute. But it is argued by defendant's counsel that the act is an infringement of the right of private property, transcending the legislature's constitutional power. If the defendant has the right to use his own land and coal mine for all the purposes to which such property is usually applied when, where, and how he may see

fit, without limitation or restriction, his neighbor, the plain-
tiff, has the equal right in his adjoining tract.   Upon each
one is therefore imposed the correlative duty of so using
his own land as not to injure his neighbor's or be hurtful
to the commonwealth, see *Haigh* v. *Bell*, 41 W. Va. 19 (23 S.
E. 666); for government is instituted for the common bene-
fit, protection, and security of the people, nation, or com-
munity.   Const. art. III, s. 3.   The state claims to reserve
the exclusive regulation of its own internal government
and police, and such power is properly exercised by the leg-
islature.   Is this statute a reasonable exercise of the police
power ?   (1) It is intended to secure private right by en-
forcing the correlative duty of so using your own land as
not to injure that of your neighbor.   (2) To preserve di-
viding lines and underground landmarks, and thus avoid
uncertainty and confusion of boundaries in coal lands and
the disquieting of titles.   See chapter 60 on fences, and
section 27 of chapter 145.   (3) It tends to prevent strife
and litigation.   (4) To provide for the safety of those
working in coal mines by sufficient pillars of support.   Un-
der this head see the many provisions in the coal mine law
(Appendix to Code, p. 991 *et seq.*)   This is no undue as-
sumption of the right to apply the police power to a sub-
ject which does not fall within it, for regulations on all
these subjects have long been recognized as wholesome and
reasonable, and as fit subjects for the exercise of the police
power, as tending to preserve the rights of the citizen and
to promote the welfare of the commonwealth.   The mining
of coal is one of the largest industries carried on in the
state.   In mining, proper support and ventilation are nec-
essary, and an ample supply of fresh air is stringently ex-
acted by our law on the subject.   See coal mine law (Code,
pp. 994, 995, ss. 9, 11).   This is necessary for the health and
safety of the miner engaged in a dangerous employment,
and for that reason the public welfare requires it; but no
proper system of ventilation can be maintained by any mine
owner unless the area to be worked by him is isolated or
bounded by a zone or rib of coal thick enough to support
the roof, and thick enough to prevent the escape of
the air, with no passways down through his dividing line

which may prevent the due circulation of the air, and render due ventilation very difficult. The same may be said of keeping his mine properly drained as required by law, and impervious to water from adjoining mines and lands. The act of 1834 fixed this bounding zone between adjoining land owners at fifty feet, the present act ten feet. Thus we see that this rib of solid coal not to be mined into by either of the adjoining owners was to be contributed by each in equal parts, was for the mutual benefit of each, for the protection of the surface, to secure independent systems of ventilation, drainage and workings, and in aid of an industry so great and widely diffused that the state as a whole is interested therein. Besides, the importance of having these unbroken ribs of support throughout the mining region is being realized as a state affair more and more as the mining of coal goes on. This regulation works no hardship on one for the benefit of the other, but is impartial, just, and reasonable, imposing a common burden for the benefit of all such owners. This regulation, in substance, has been in force for more than sixty years without complaint. This is a high degree of evidence that it is not an unconstitutional exercise of police power to require this natural boundary wall to be preserved intact. See 15 Am. & Eng. Enc. Law, 593 *et seq.;* Cooley, Const. Lim. (3d Ed.) top page 578.

This brings us to the evidence. Joshua M. Ross sold and conveyed to Jesse Everly, by deed dated 16th February, 1860, the land now owned by plaintiff, Mapel. In it he makes this reservation: "The said Ross excepts the privilege of coal for his part of the farm at the bank now in use." What Ross did not then sell, which he calls "his part of the farm," is the land now owned by defendant, John. As to the nature and extent of defendant's right to mine coal on plaintiff's land, it is enough for our present purpose to say that the privilege to mine coal at the bank then in use was an easement annexed to defendant's land, the dominant tenement, to mine coal at that open mine on plaintiff's land the servient tenement, which was only a privilege to take coal at a particular place for a particular purpose; that the dominant tenement does not adjoin the

servient tenement where the defendant was driving his new entry, but it was out of other land of defendant, which adjoined the servient tenement at that point. This, in my view, is wholly immaterial. Defendant was warned by plaintiff not to excavate or dig into or through this stone-coal division fence, this underground party wall, created and established by law; but he persisted until he had dug across the dividing line and eighteen inches into the five feet left standing on the other side, requiring, as it appears, an injunction to stop him. If we are not mistaken in some of the leading objects to be accomplished which moved the legislature to enact this statute, then defendant was prohibited from mining coal in and through this neutral zone both by the spirit and the letter of the act. (1) By the letter, for the place where defendant had a right to mine coal was an open mine then in use; and if for any reason he had the right to drive a new entry into the coal, it could only be on the land of plaintiff. He had no right to break through the dividing line, the party wall between his land and the land of plaintiff. Defendant was not the sole owner of the coal on plaintiff's land, was not the owner of, or one having title to, such coal in the sense in which these terms are used in the statute. He was interested in Mapel's coal bank to the extent of the privilege already mentioned, which, so far from constituting any consent in writing given by any one for him to dig through the ten foot dividing fence of coal, negatives any such right by confining his right of entry and mining to plaintiff's side of the dividing line. (2) By the spirit of the act, for they were two separate, distinct tracts containing a vein of the Pittsburg seam of coal ten feet thick, shown to be quite valuable on plaintiff's land. And defendant shows no pretext or color of right to destroy its integrity as a coal property by digging away the dividing wall, and making it one mining property with his own, so far as drainage, ventilation, propping, ingress, and egress etc., are concerned, to the very serious damage of plaintiff's land as a distinct coal plant. Such a seam of coal at such a place may be worth five hundred dollars per acre, and in such a case the penalty fixed by the statute can not by any means be re-

garded as a harsh one. But with that we have nothing to do, for we find the law thus written.

The judgment for plaintiff on his demurrer to evidence was right, and is affirmed.