# CHARLESTON.

## GAWTHROP *v.* FAIRMONT COAL CO.

Submitted September 3, 1909. Decided February 14, 1911.

MINES AND MINERALS—*Operation of Mine—Statutory Regulations.*
   The provisions of Code 1906, chapter 79, section 7, inhibiting the mining of coal within five feet of a division line, apply to one owning a vein of coal without ownership of the surface.

Error to Circuit Court, Harrison County.

Action by John A. Gawthrop against the Fairmont Coal

Company.   Judgment of dismissal, and plaintiff brings error.
*Reversed and Remanded.*

*Millard F. Snyder* and *Harvey W. Harmer,* for plaintiff in error.

*John Bassel* and *G. M. Alexander,* for defendant in error.

ROBINSON, JUDGE:

The plaintiff sued for the penalty prescribed by Code 1906, chapter 79, section 7. The court sustained a demurrer to the declaration, and dismissed his suit. He complains by writ of error.

The statute on which this suit is based reads: "No owner or tenant of any land containing coal shall open or sink, or dig, excavate or work in any coal mine or shaft, on such land, within five feet of the line dividing said land from that of another person or persons, without the consent, in writing, of every person interested in, or having title to, such adjoining lands in possession, reversion or remainder, or of the guardians of any such persons as may be infants. If any person shall violate this section, he shall forfeit five hundred dollars to any person injured thereby who may sue for the same."

Now, the declaration avers that the defendant owned only the vein of coal itself, and not the surface as well. Defendant insists that the statute puts no liability on such owner; and that, therefore, the demurrer was rightly sustained. So the case narrows to this question: Do the provisions of this statute apply to one owning a vein of coal without ownership of the surface therewith?

We hold that the statute does apply to such owner of a coal vein. One who has a deed for a stratum of coal in land is an owner of that land to the extent of his coal stratum therein. He is one of the different owners of "land containing coal" because he has purchased that part of the land which is coal. There may be owners of the other strata of the same land, but he is an owner of the land to the extent of his stratum. He is one of the owners of the coal land viewed in its complete physical form. The very context of this statute shows that the word "land" is used in a sense that does not relate to a view of the mere surface. It plainly refers to the "land" as all the

earth within a boundary. No one can reasonably say that the makers of this statute had land in mind from the mere viewpoint of the surface. They spoke of "land containing coal." Thus they spoke of land as a body from the surface downward. They meant to legislate relative to land extending from the surface to the interior of the earth. The very spirit and purpose of the act shows this intention. To view the statute otherwise, would make its very purpose abortive. We cannot impute an idle purpose to the authors of this law. So, in view of the purpose which the law-makers had in mind, they must necessarily have meant to inhibit any owner interested in that physical body of which they spoke, whether his ownership be as to a vertical section or a horizontal part thereof. These views of this statute are quite consistent with its beneficent purposes so clearly explained in *Mapel* v. *John,* 42 W. Va. 30.

Defendant argues that the statute is a penal one and that it must be strictly construed. That may be true. And in what we have said, we do not violate the rule requiring strict construction of a penal statute. "The rule is not violated by adopting the sense of the words which best harmonize with the object and intent of the legislature. Though a statute may be of a class which must be construed strictly, it is nevertheless to be so construed as to effect the intention of the legislature. Effect is to be given to the plain meaning of the language, and strict construction is to be applied only where the effect is reasonably open to question. The rule that penal statutes are to be construed strictly is not violated by allowing their words to have their full meaning, or even the more extended of two meanings, where such construction better harmonizes with the context." 2 Lewis' Sutherland on Statutory Construction, section 521.

Defendant further says that this statute had an origin at a very early date, prior to the practice of severing title to land by the distinct ownership of coal veins; and that, therefore, the makers could not have intended to refer to an owner of coal apart from the rest of the land. We grant that these early law-makers looked upon "land containing coal" as an unsevered estate in realty. We have said that the statute so views it—that the statute refers to land as a physical body extending downward from the surface. But the law-makers said that no owner of that physical body, without defining the character or extent of

the ownership, should do so and so.  They must be presumed to
have known that the common law permitted a severance of title
as to a horizontal portion of land, and that "land containing
coal" could pass to more than one owner, by conveyances of
different strata.  Modern conditions and practices cannot change
the force of their words, so long as those conditions and practices
come within their meaning.  They virtually said that no owner
of any section of coal land should do that which the statute in-
hibits, and the fact that it has become the practice to own
separately a horizontal section cannot affect their meaning.

The construction sought by the defendant would lead to an
absurdity.  Let us illustrate by the facts of this case: The
plaintiff owns "land containing coal"as to which there has been
no severance of title; the defendant owns only the vein under
the adjoining surface.  In other words, plaintiff owns land with
coal; defendant owns only the coal adjoining.  If defendant's
contention be sound, defendant may enforce the statute against
plaintiff, but plaintiff may not enforce the statute against de-
fendant.  Did the legislature so intend?  In reason and sense,
no.  It intended to prevent those owning coal from digging
near the line of an adjoining owner of coal.  It may have used
language suggested by conditions and customs then existing,
but the intention is plain.  Only by such intention can the
evident purposes of the statute be met.  "A penal statute should
receive a reasonable and commonsense construction, and its force
should not be frittered away by niceties and refinements at war
with the practical administration of justice.  The principle of
strict construction does not allow a court to make that an offense
which is not such by legislative enactment; but this does not
exclude the application of common sense to the terms made use
of in an act in order to avoid an absurdity which the legislature
ought not to be presumed to have intended."  2 Lewis' Suther-
land on Statutory Construction, section 528.

The judgment is reversed and the case remanded.

*Reversed and Remanded.*