# CHARLESTON.

## Wilson v. Shrader.

Submitted September 11, 1912.　Decided October 28, 1913.

1. PLEADING—*Time to Answer—After Office Judgment.*

   The office judgment in an action in which a writ of inquiry is necessary does not become final on the last day of the next succeeding term of the court, and the defendant may plead to the declaration at any time before execution of the writ of inquiry.　(p. 107).

2. JUDGMENT—*Pleading—Office Judgment—Demurrer to Declaration.*

   The defendant in an action at law, in which the office judgment has become final, but has not been entered by the court, may demur to the declaration notwithstanding the lapse of the statutory period and the finality of the judgment, and, if the demurrer is sustained, formal judgment on the office judgment cannot be entered.　In such case, the office judgment becomes a nullity, if the declaration is not amended or cannot be cured by amendment.　(p. 107).

3. ASSIGNMENTS—*Assignability—Action for Penalty.*

   A right of action for a penalty, given by section 7 of chapter 79 of the Code, is not assignable.　(p. 108).

4. SAME—*Action for Penalty—Parties—Demurrer.*

   A claimant of such penalty by an attempted assignment from the person entitled to sue therefor cannot maintain an action for it, in the name of his alleged assignor, and the objection of non-assignability of the claim is available on a demurrer to the declaration.　(p. 112).

5. ACTION—*Trespass—Waiver of Tort—Election of Remedies.*

   Where a trespass has been committed upon real estate, and property severed therefrom and sold by the defendant or converted to his own use, the owner may waive the trespass and sue for the value of the property, and the law will imply a promise to pay for it.　(p. 113).

6. APPEAL AND ERROR—*Record—Evidence.*

   To make the evidence in an action at law part of the record, it is only necessary to use such means of identification in the bills of exception and orders as make the adoption thereof reasonably certain.　(p. 114).

7. SAME.

   The evidence in an action of debt, dependent upon the same issues of fact as those involved in another action of assumpsit, is made part of the record in the latter by the following agreement filed therein:　''The parties hereto agree that the facts in this case are

as follows, (Here insert the transcript of the evidence as certified by Henry Garfield Chaney, the official Stenographer of this Court, as reported in the same styled case, marked Debt No. 1., tried at the September Term of this Court, 1908.)'' (p. 114).

8. SAME—*Review—Judgment—Trial by Court.*

Submission of an action of assumpsit to the court in lieu of a jury upon evidence so brought into the case, is equivalent to a joinder in a demurrer to evidence, and the judgment, upon a writ of error thereto, is treated and dealt with as a judgment upon a demurrer to evidence. (p. 116).

(ROBINSON, JUDGE, dissenting as to point 2 of Syllabus.)

Error to Circuit Court, Barbour County.

Action by Henry S. Wilson against Samuel W. Shrader. Judgment for plaintiff, and defendant brings error.

*Reversed and Dismissed.*

*John L. Hechmer,* for plaintiff in error.

*J. Hop Woods,* for defendant in error.

POFFENBARGER, PRESIDENT:

Henry S. Wilson, suing for the benefit of Samuel V. Woods, instituted his three several actions in debt against Shrader for recovery of the penalty given by section 7 of chapter 79 of the Code against a coterminus land owner for mining coal within five feet of the line of the adjacent owner without his consent in writing, and an action of assumpsit for the recovery of the value of the coal taken out of the adjacent land. Each of the three actions of debt was founded upon a violation of the statute, separate and distinct from those upon which the others rested, there having been three trespasses, respecting the same tract of land, or one trespass at three different places. The evidence taken in one case was used in all of them, and there was a judgment for $500.00 in each of the actions of debt and for $5,000.00 in the action of assumpsit.

The declarations were all filed at April Rules, 1902, and the common orders were confirmed at May Rules, 1902, and a writ of inquiry awarded in the assumpsit action. At the May term, 1902, the defendant appeared and orders were entered purporting to file pleas and counter affidavits, without indicating the character of the pleas, but a paper was filed in each

case bearing the style of the action and having the form and substance of an affidavit, denying any indebtedness upon the demand or demands stated in the declaration. Nothing further was done until the 29th day of September, 1905, when the plaintiff moved the court to enter judgment for him in each of the three actions of debt, treating the papers filed as pleas and counter affidavits as being only affidavits, and the judgments as having become final on the last day of the May term of court, 1902, for want of pleas. These motions were overruled and leave given the defendant to demur to the declarations. On the 2nd day of March, 1907, the plaintiff filed an amended declaration in each of the four cases and sued out process thereon. On the 10th day of May, 1907, the court entertained and sustained demurrers to the original declarations in all of the cases, and overruled demurrers to the amended declarations therein.

The office judgment in the action of assumpsit did not become final on the last day of the May term, 1902, for the case was one in which a writ of inquiry was necessary and proper and had been awarded. In such cases, the office judgment does not become final before execution of the writ of inquiry. *Walls* v. *Zufall & Co.,* 61 W. Va. 166.

If the declarations in the actions of debt set forth no causes of action and were wholly and incurably bad, it is immaterial whether the affidavits filed therein as pleas or having the double features of pleas and affidavits, can be treated as pleas or not, for there can be no judgment without a declaration. "If a defendant wishes to contest both law and fact, he can at the same time both demur and plead. The court will entertain his demurrer, but it confesses the fact, and his non-appearance further confesses it. If the demurrer is over-ruled at the first term he can plead any matter of fact admissible; but if overruled at a later term, he cannot plead any plea of fact. If the demurrer is held good, and the case is dismissed, the office judgment amounts to nought, and judgment in court is not entered." *Bank* v. *Burdett,* 61 W. Va. 636, 638. This case allows the office judgment to stand pending the test of the sufficiency of the declaration and the process of amendment at the bar of the court. But, if the declaration

is bad and not amended or is incurably bad, the office judgment dies. In *Bank* v. *Burdett,* the demurrer had been filed at the first term, but no reason is perceived why it cannot be filed at a later term, provided formal judgment has not been entered. The office judgment, though final under the statute, is not a finished or complete judgment. It is final in the sense of foreclosure of issues of fact, but it must be entered to be complete. A demurrer leaves it standing as to matters of fact, but carries the case over as to the issue of law. The office judgment confers right to a formal judgment at the first term, but, if the plaintiff sees fit to forego this right, the issue of law, or the right to raise it, remains open to the defendant.

The office judgment is potentially final, giving right to a complete judgment, if no demurrer is filed before entry thereof, and on a good declaration, if there is a demurrer. No harm can result from this. If there is a demurrer for formal defects in the declaration, an amendment at the bar of the court will cure them and judgment may then be entered, and if the declaration sets forth no cause of action at all and is incurably bad, there ought not to be any judgment on it. This construction of the statute makes it work out equitable and just results. The opposite one works an unjust and absurd result in those instances in which no good case can be made on the matter found in the declaration.

Samuel V. Woods, the real plaintiff in these actions, claims the penalties given by the statute, as assignee of Henry S. Wilson, the nominal plaintiff. If the rights of action for the penalty are not assignable, the declarations are wholly and essentially bad. They set forth no causes of action, the benefit of which the assignee can take. A vital inquiry, therefore, is whether penalties under the statute here involved are assignable. Prior to the 8th day of February, 1901, Henry S. Wilson owned a small tract of land containing five acres, in which there was coal and which he conveyed to Samuel V. Woods on said date. Adjacent thereto lay another tract of land which Geo. C. Lee and wife conveyed to Samuel W. Shrader, by deed dated August 1, 1899, and Shrader by his deed dated March 14, 1901, conveyed it to the Tygarts Valley Coal & Coke Company, a corporation. While Shrader owned

the adjacent tract of land, mining operations were conducted on it which extended, at three different points, not only within five feet of the line, but to the line and beyond it into the property owned by Wilson, by reason of which he had rights of action, or at least a right of action, against somebody for the penalty given by the statute. In his deed to Woods, he endeavored to assign these rights of action, as well as one for the coal taken from the land.

The assignability of statutory rights, not all of which are penalties by any means, is said to depend upon the language of the statute conferring them. "If the statute forbids the assignment of a right conferred by it, or if the legislative intent, as shown by the act, is to confer a right strictly personal to the person upon whom it is conferred, then such act is not assignable. In the absence of such express or implied prohibition, the assignability or non-assignability of rights conferred by statute is to be governed by the principles governing the assignability or non-assignability of choses in action in general. Statutory rights giving compensation for property loss suffered are, generally, said to be assignable, whereas rights to recover penalties and rights given by statute for the redress of personal wrongs are not assignable." 4 Cyc. 26. Obviously, the penalty given by the statute here in question is not intended as compensation for coal taken or damage to property. It may be incurred without the taking of any coal from the land of the party entitled to sue. The taking of any coal at all within five feet of the division line and out of the land belonging to the taker himself, inflicts the penalty. The foundation of the right of action, therefore, is not benefit obtained by the defendant from the plaintiff. It rests upon no consideration, nor is it given as compensation for any actual injury. The enactment of it seems to have been nothing more than an exercise of the police power of the state and the penalty to have been prescribed by way of sanction for the enforcement of the policy declared by the statute. It does not stand in lieu of the right of action for injury to the land by the mining of coal therefrom, or a right of action for the value of coal taken, nor take the place of either. Nothing in the terms of the statute suggests any such consequence or

result. It is not a common law right of action, made assignable by statute, for the statutes giving survival to rights of action and so impliedly and incidentally making them assignable, contemplate only rights of action founded upon, or growing out of, contracts, such as were enforcible in equity, before the statutes relieved the defect in the common law, so as to permit assignees to sue in the law courts. "The words 'choses in action' mean nothing more and can have no broader signification than the words 'rights of action', and it has been uniformly held that these latter words, 'rights of action,' only include rights of action founded on contracts, or for injuries to property, and not rights of action for torts, which are purely personal, such as the action for slander, which dies with the person, and never survives to the personal representative." *Dillard* v. *Collins,* 25 Gratt. 343. The right of recovery given by this statute is not a right of action of that sort, for it is neither founded upon contract nor is it given for injury to property. The statute which gives it is of comparatively recent enactment, and was not in existence at the date of the enactment of the statute legalizing assignment of choses in action. Hence there is no ground for the assumption of legislative intent, in the passage of the older statutes, to make it assignable. In *Fraker* v. *Cullum,* 24 Kan. 679, Brewer, J., said: "It cannot be justly said that an action to enforce a forfeiture or recover a penalty is one founded on contract, no matter who is the party chiefly benefitted by the recovery." In that case, an effort was made to set off a forfeiture under an act of Congress against a national bank in an action on a note. The claim of right to set off the forfeiture or penalty was based upon the theory that, as the penalty was given by statute, the right of recovery was a right arising out of contract. This theory was utterly repudiated and condemned by the court. Proceeding, Judge Brewer said: "There is, to be sure, an implied obligation resting upon every member of society, to break no law and do no wrong to his neighbor; but this obligation is not the implied contract of which the law books speak as one whose breach gives a cause of action upon contract." The analysis of the statute, its provisions and purposes, and these authorities, deny to the penalty the quality

of assignability under the statute imparting it to choses in action. Obviously it is not in any sense a chose in action. It is a mere naked right of action given by statute by way of punishment for a specific unlawful act, an act made unlawful by the statute itself. Such rights of action are not assignable, unless the statute makes them so. In *McBratney* v. *Railroad Co.*, 17 Hun. (N. Y.) 385, the assignability of penalties inflicted upon railroad companies for excessive charges was involved. After citing authorities, the court said: "But it is unnecessary to pursue the subject further; the fact that the statute which creates the penalty gives the right to sue for it to the party paying the excessive fare, and to no one else, seems to lead necessarily to the conclusion that the cause of action cannot be assigned." Such is the character of the statute involved here. It gives the right of action only to the person injured, saying: "If any person violate this section, he shall forfeit five hundred dollars to any person injured thereby who may sue for the same." Construing and interpreting this statute, this Court has held that the person injured and entitled to sue is the person who was the owner of the land at the time of the violation of the statute, or a tenant thereof or any person then having an interest therein. *Selvy* v. *Coal Co.*, not yet reported; *Shinn* v. *Coal Mining Co.*, 78 S. E. 104; *Mapel* v. *John*, 42 W. Va. 30. An assignee of such person is clearly not the injured person. He claims not in his own right, but through another, and is not within the terms of the statute. It does not say the person injured or his assignee may sue. It is a highly penal statute and falls under the rule of strict construction. Such statutes do not include anything beyond their letter, even though within their spirit. *Reeves* v. *Ross*, 62 W. Va. 7, 17. Nothing can be added to their terms even for the plausible purpose of covering what seems to be within their purpose and spirit. The assumption of assignability of this right of action can rest upon nothing other than the further assumption that the legislature intended the penalty to be paid at all hazards and to make it an asset in the hands of any person that may be able to obtain an assignment of it. This is an assumption founded upon an assumption. Not a word in the statute suggests or intimates such intent on

the part of the legislature. There is no more reason for the assumption in this case than in any other case in which a penalty is inflicted, and the reasons that preclude the assignability of mere personal rights, such as actions for slander, assault and battery and other pure torts, obviously apply here. Assignability of such claims encourages litigation and strife. The same principle of public policy forbids the conversion of penalties into commodities or assets. The legislature failed to make the right assignable because such action would have been violative of its policy.

In resistance or avoidance of the result foreshadowed by this conclusion, *Stevens* v. *Brown,* 20 W. Va. 450, is relied upon. It says the assignor, in an action brought by one person for the use of another, is the legal plaintiff, and invalidity of the assignment being immaterial, is not matter of defense. The claim in that case, a judgment, was an assignable one, no matter what sort of a cause of action it arose out of. To apply this doctrine to a non-assignable right would defeat the policy of the law, since it would make every right assignable. Though, in such case the assignor is the legal plaintiff, he is not the real nor substantial plaintiff. He is not responsible for costs. Nor can he dismiss or control the action or receive the money. *Clarkson* v. *Doddridge,* 14 Gratt. 42; *Tolson* v. Elwes, 1 Leigh 436.

Upon these principles and conclusions, we are clearly of the opinion that the trial court should have sustained demurrers to the amended declarations in all of the three actions of debt, and that it rightly sustained demurrers to the original declarations therein.

In action of debt No. 1, there was a trial by jury and a verdict upon which judgment was rendered. Action in debt No. 2 was submitted to the court in lieu of a jury, upon the evidence taken in action No. 1, and the same procedure was had in action of debt No. 3. For the reasons stated, the judgments in all of said three actions will be reversed, the verdict set aside in said action No. 1, the demurrers to the amended declarations in all of them sustained and the actions dismissed, it appearing that the declarations cannot be so amended as to

give the plaintiff a right of action in the capacity in which he sues.

The demurrer to the amended declaration in the action of assumpsit, containing the common counts, including one for money had and received to the use of the plaintiff, and a special count for coal mined from the plaintiff's land, carried away, sold and converted into money by the defendant, was properly overruled. There is a verbal inaccuracy in the special count, but it relates to form rather than substance. Instead of saying the defendant, being indebted to the plaintiff for such coal, in consideration thereof promised to pay its specified value, the declaration, after stating the facts, says: "the said Defendant thereby promised to pay and become liable to the Plaintiff," &c. Notwithstanding this departure from the usual form, the count shows how the defendant became indebted and alleges a promise to pay the amount of the indebtedness. It does not omit the essential averment, the promise.

In passing upon the ruling upon the demurrer to the declaration it became necessary to inquire as to the propriety of the remedy invoked. Ordinarily, trespass on the case is the form of action resorted to for injuries to real property, but this is not for injury to the land. Its basis is a right to demand from the defendant money had and received for the use of the plaintiff, and, to recover, it is necessary to trace money or value into the hands of the defendant which in equity and conscience belongs to the plaintiff. Assumpsit is not the proper form of action for the recovery of damages for a mere wrong. It only lies to recover from the defendant that which is in his hands and belongs to the plaintiff, and he may have such a fund derived from timber severed from the plaintiff's land or coal dug therefrom, as well as from the proceeds of sale of personal property wrongfully taken from the plaintiff. In *Powell* v. *Rees,* 2 N. & P. Rep. 571, Lord Denman C. J. said Lord Mansfield had correctly laid down the distinction in *Hambly* v. *Trott,* Cowp. 371, in the following terms: "There is a fundamental distinction: if it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer, as beating or imprisoning a man, &c.,

there the person injured has only a reparation for the *delictum* in damages, to be assessed by a jury. But where, besides the crime, property is acquired, which benefits the testator, there an action for the value of the property shall survive against the executor. As, for instance, the executor shall not be chargeable for the injury done by his testator, in cutting down another man's trees, but for the benefit arising to his testator, for the value or sale of the trees, he shall.'' In *Powell* v. *Rees,* the action of assumpsit was allowed for the value of coal taken by the defendant's decedent from the plaintiff and sold. For further precedents, see *Downes* v. *Finnegan,* 58 Minn. 112; *Hagaman* v. *Neitzel,* 15 Kan. 383; *Evans* v. *Miller,* 58 Miss. 120.

Denial of right to test the correctness of the court's finding upon the issue of fact is based upon alleged absence of the evidence, the sufficiency of the bill of exceptions being challenged. As has been stated, the evidence in action of debt No. 1 was taken for use in all of the other cases. The agreement for submission of the action in assumpsit to the court in lieu of a jury was in writing and has been certified by the clerk. An order entered in the action of assumpsit says it came on ''to be heard upon the stipulation and agreement of counsel heretofore made, and filed herein and the proceedings in said action No. 1, now being part hereof thereby.'' This says not only that the agreement was filed in the cause, but that it made the proceedings in action No. 1 part of the proceedings in the action of assumpsit. The agreement itself says: ''The parties hereto agree that the facts in this case are as follows, (Here insert the transcript of the evidence as certified by Henry Garfield Chaney, the official Stenographer of this Court, as reported in the same styled case, marked Debt ''No. 1, tried at the September Term of this Court, 1908.)'' The clerk has certified as part of the record of the four causes a certificate or transcript of evidence made by Henry Garfield Chaney in the action of debt No. 1. As the agreement bears date January 11, 1909, and the action of debt had been tried at the September term of court, 1908, the evidence referred to in the agreement, as having been transcribed, was no doubt in existence at the time, and the agreement

identifies it. That agreement calls for a paper entitled "Transcript of the Evidence," and as having been certified by Henry Garfield Chaney, the official stenographer of the court. Turning to it, we find the paper relied upon as the evidence in the case and so certified by the clerk has both of these marks of identification. It is said the agreement relates only to the facts proved, but, it calls for insertion of the transcript of the evidence. Hence the parties must have used the word "facts" in the sense of evidence. Aside from this agreement, each of the two bills of exception, made a part of the record by a proper order in action of debt No. 1, refers to a certificate of evidence and makes it a part thereof, and a paper signed and sealed by the judge is found in the record. It is skeleton in form and calls for insertion of the plaintiff's evidence as shown by the transcript of the stenographer's notes "hereto attached", and also for the insertion of the defendant's evidence "as shown by the attached transcript of the stenographer's notes." It would be difficult to devise a clearer and more effective method of identification than that of attachment of the paper itself to the paper, purporting to adopt it. Though this skeleton paper is not labeled "certificate of evidence", it is such in fact. It bears the style of the action and is signed and sealed by the judge, who certifies in it that "the foregoing is all the evidence that was introduced on the trial of the foregoing case." Bill of exception No. 1 adopts and makes a part of it "the certificate of evidence filed in this case." Bill of exception No. 2 does likewise. These papers clearly bring the evidence into the record.

From what has been said concerning the grounds upon which this action of assumpsit is maintainable, under the circumstances disclosed here, it is obvious that the evidence, to warrant recovery, must go to the extent of proving the defendant got the plaintiff's coal and converted it into money or to his own use in some manner. It is not enough that he owned the adjacent land and permitted somebody to mine over the line. That the coal was mined out of the plaintiff's land through the Shrader land, after Shrader purchased it and before he sold it, are facts well established by the evidence. But Shrader denies that he did the mining. He says the

mine was operated by a copartnership consisting of Eliza J. Shrader, his mother, J. W. Miller and R. O. Dunn, and he managed the mine for them, and further that he purchased the land and took the title in his own name as trustee for them. According to his testimony, the firm did business under the name of Tygarts Valley Coal Company, and other witnesses say the business was run in that name. He says the articles of copartnership were prepared by the plaintiff's attorney and the men were paid by check bearing the firm name and that shipping cards and store orders bore it as well as a notice at the mouth of the mine. He denies that he was a member of the firm and that he had any money invested in it and says he represented the interests of R. O. Dunn and Eliza J. Shrader. He admits that he had an interest through his mother, Eliza J. Shrader, but does not define that interest. At the same time he repeats his denial that he had any interest in the firm. In this connection he says: "Only a small interest, simply managing the company for these people." This answer was followed by the question: "Well you were a member of the company?" A. "In a way, yes." His evidence, taken all together, falls short of an admission of membership in the firm as a partner, and there is no other evidence of his membership thereof. That the work was done by a copartnership is established by his testimony. He says the articles were in writing and prepared by the plaintiff's attorney, but the paper was not introduced, nor were its contents shown. At the date of the conveyance by Lee to Shrader, the mine was open and running, and its operations were continued, with Shrader in charge of the work, until the copartnership was formed, soon afterwards, but no coal is shown to have been taken from the Wilson land before the firm was organized, and Shrader says he held the land only as a trustee and was working on a salary. In our opinion, the evidence fails to sustain the declaration and the court below should have found for the defendant.

As the case was submitted to the court upon an agreement that the evidence in another case should be taken and treated as the evidence in it, the rule applicable to demurrers to evidence governs its disposition, and calls for the entry here of

the judgment the trial court should have rendered.  Accordingly the judgment complained of will be reversed and the action dismissed with costs to the plaintiff in error both here and in the court below.

*Reversed and Dismissed.*

ROBINSON, JUDGE, (dissenting as to point 2 of the syllabus) :

It seems anomalous that there may be right to demur after final judgment in any case, particularly when, as in this case, the party granted that right is grossly in default.  So to hold is wholly out of accord with ordinary principle, to say nothing of the plain terms and the well recognized spirit and purpose of secs. 46 and 47, ch. 125, Code 1906.

The statute provides that an office judgment which is not set aside in the manner therein provided shall become a *final judgment* at the end of the first term after which the office judgment is taken.  Surely this does not mean that the judgment is merely final as to matters of fact and still not of final character as to matters of law.  It plainly means that the suit is ended, except as to the mere ministerial act of entering the judgment in the order book.  It means final judgment as the words are ordinarily understood—the end of the case.  ''A final judgment is such a judgment as at once puts an end to the action by declaring that the plaintiff has or has not entitled himself to recover the remedy for which he sues.'' Black on Judgments, sec. 21.  The statute was meant to give a defendant ample time for defense and then to foreclose him from any defense, if he did not present it in that time.  Always, everywhere, it has been conceded that this statute was made to hasten the end of litigation.  Yet the decision herein permits one to come after final judgment, as under general law he can do in no other case, and take further steps even without showing good cause for his delay.  Quite out of harmony is this with the very provisions of the statute itself, which provides that even at the term at which the defendant may set aside the office judgment, if he is so far in default that the judgment has been entered or a writ of inquiry executed, he must show good cause before he can have the judgment set

aside. *Post* v. *Carr,* 42 W. Va. 72; *Wilson* v. *Kennedy,* 63 W. Va. 1.

That the judgment has not been entered in the order book does not give a defendant right to appear at a subsequent term and re-open the litigation by entering a demurrer to the declaration. The statute expressly makes the judgment final at the end of the first term, though not entered in the order book. The case, by the force of the statute, is then judicially closed. The court has no further judicial power in regard to it. It has no jurisdiction to entertain a demurrer. Is not this what was held in *Marstiller* v. *Ward,* 52 W. Va. 74? That case plainly holds that nothing but ministerial duty remains in the court. If no judicial power remains in the court after the end of the term at which an office judgment becomes a final judgment, how can the court entertain and pass on a demurrer to the declaration? Speaking of the provisions of the statute, Judge BRANNON, in the case last above cited, says: "These provisions mean something. They mean that the defendant has had ample time to appear, two rules and one term, and by his default, he has confessed the demand, and it only remains for the court to record judgment, if certain other things which are required of the plaintiff by other provisions of section 46 are done by him, that is, if a certain affidavit is filed or proof of the demand furnished. But those things are required of the plaintiff; the statute does not enable the defendant, after that day, *to make any defense.*" Further on in the opinion he says that after the first term all defense is denied, that the court has no further jurisdiction, and that any further step in the cause is *coram non judice.* In *Bank* v. *Burdette,* 61 W. Va. 636, relied on in the majority opinion herein, Judge BRANNON wrote nothing to the contrary. Nowhere therein does he even intimate that a demurrer may be entered at a term subsequent to the one at which the office judgment becomes a final judgment. He was dealing with a case in which a demurrer was entered before the office judgment became a final judgment. He does say that "if the demurrer is held good, and the case dismissed, the office judgment amounts to nought," but plainly he is not there speaking of the *final* judgment which the law gives at the close of the term. He is speaking of the *office*

judgment, the judgment entered at rules. He does not mean the final judgment, for that is not an office judgment, but a judgment of the term—by lapse of the term. So he is speaking of proceedings within the term, not of something done at a subsequent term. He tersely says: "In short, whether there is, or is not, a demurrer, no other defence can be made after the first term." The point he was called upon to decide was whether the entry of the demurrer before the office judgment became a final judgment had the effect of setting aside the office judgment. He held that it did not—that it was not the character of plea that would set aside the office judgment. And though it was there held that a demurrer entered at the first term would not even operate to prevent the office judgment from becoming a final judgment, yet my associates now give a demurrer entered at a later term the effect absolutely to annul a judgment that has become final under the statute.

Certainly if a demurrer is in time it may avail as a defense. But the defendant must put it in seasonably, or it may not avail him. If entered and rightly sustained before the office judgment becomes a final judgment it will annul the office judgment. Yet simply its entry after office judgment will not prevent finality if it is not sustained before the end of the first term. The defendant, if tardy in demurring, must recognize this and not rely alone on his demurrer if there is danger of the first term going by without the court's judgment on his demurrer. He must plead his matter of fact also, file his counter affidavit, and thereby set aside the office judgment so that when his demurrer is acted on the law will not have pronounced final judgment against him. For, the finality of the judgment pronounced by the statute at the close of the first term, cuts off a pending defense by demurrer entered after office judgment. There is no hardship in this. Only the default of the defendant makes the demurrer to be pending at so late a time. A demurrer filed in term, after office judgment at rules, is one filed after default. The entry of the office judgment at rules is a pronouncement of default. To one in default the law does not accord extraordinary grace. It will let him in to be heard, provided his tardiness does not delay. *Reynolds* v. *Bank,* 6 Grat. 183. Were not this rule recognized and enforced, litigation would be extended and

become vexatious. Dilatoriness would be honored. Even an answer filed at the first term after default at rules will not delay, unless good cause for the tardiness is shown. *McLaughlin* v. *Sayres*, 78 S. E. 355. A defendant who has been so neglectful in answering the summons of the court as to allow a confession by office judgment at rules to be entered against him, is not to be rewarded by allowing a demurrer thereafter entered by him to retard the advance of the proceedings under the strict provision of the statute of which he has all the time had notice. When he is summoned to rules, if he finds a demurrer a proper defense, he should there enter it. His appearance and the entry of a demurrer at rules prevents default—prevents an office judgment—and thus saves him wholly from the risk of a final judgment at the end of the first term. *Bank* v. *Bair*, 77 S. E. 274. If he comes later, it is his own fault. He may readily prevent an office judgment by entering his demurrer at rules. If he does not do so, but allows office judgment against him and waits until the term to demur, he must take such chances on his late demurrer being heard as the short time before the day of final judgment avails him.

On what principle can a distinction be made between defense of law and defense of fact so that the latter may be foreclosed by final judgment and the former admitted after final judgment? A final judgment forecloses everything in the case. All matters of law or fact, raised or that might have been raised, are settled and merged into it. It is too late for demurrer or plea. After final judgment nothing is open to the unsuccessful party but proceedings under the statute for correction of errors, writ of error, or appeal. He can not reopen the judgment simply by a demurrer as to which he was in default long before the judgment became final. The substantiality of a final judgment can never be tested by a demurrer to the declaration. If the declaration is so defective as not to sustain the judgment, the defendant must show that on error or appeal. The proposition that after final judgment right to demur, to plead, or to take further steps, is cut off, is so uniformly recognized, so consistent with reason and principle, that no citation of authority is necessary to support it.

If a demurrer may be put in after final judgment why may not a plea in abatement be then filed as well? We have held that a plea in abatement is not such issuable plea as will set aside an office judgment, since it does not go to the fact of the debt sought to be recovered. If everything is not ended by the final judgment, if it only forecloses the question of fact and its standing is conditioned on matters outside of fact, why may not a plea in abatement be available even after the finality of the judgment—at a subsequent term?

Further, suppose a demurrer, entered after final judgment, is sustained and the plaintiff permitted to amend his declaration. Shall not the defendant then be permitted to plead to the amended declaration? Why not? He has had no prior opportunity to do so. No such pleading has been in the case before. New matters are alleged by way of amendment. The defendant is not in default as to them. He could not answer them earlier. Shall he not be given an opportunity to plead to that for the first time presented? Shall the judgment be supported by an amendment of the declaration and the defendant denied a hearing as to the truth of the amendment? If so, though he is successful in his demurrer it avails him nought. Then why allow it at all? But if he is granted the right to plead and an issue is made on the amended declaration, there must be trial. What then has become of the final judgment that the statute gave? What has become of the speedy operation of the statute?

The court, as one of original jurisdiction, is wholly without power over a judgment that has become final under the force of the statute. So held Judge Moncure, as to a similar statute, in *Enders' Ex'rs* v. *Burch,* 15 Grat. 64. After the final judgment it can take cognizance of no further steps in the case tending to defeat the judgment, except proceedings for the correction of error under Code 1906, Ch. 134. "All proceedings in an action at law after an office judgment in favor of the plaintiff has become final are a nullity, or should be set aside so as to give the plaintiff the benefit of the final judgment in his favor." *Gring* v. *Lake Drummond Canal and Water Co.,* 110 Va. 754.

It is elementary that defenses of law or fact must come before final judgment.