# CHARLESTON

PARKERSBURG & MARIETTA SAND COMPANY v. SMITH.

Submitted May 4, 1915.   Decided May 18, 1915.

1. ASSUMPSIT, ACTION OF—*Declaration—Special Count—Sufficiency Against Demurrer.*

    A special count in a declaration in assumpsit, counting upon an original and a second or modified contract, and which after averring both contracts charges a promise on the part of the defendant to pay the amount accrued to plaintiff under the contracts pleaded, is not rendered bad on demurrer because of its omission to charge a promise to pay "the sum of —————— dollars" alleged in a previous paragraph to be due under the first or original contract pleaded.   (p. 249).

2. SAME.

    Nor is such count bad on demurrer for failure to aver a promise of defendant to pay respectively the two several sums demanded, one accruing to plaintiff under the contracts in writing pleaded, and the other under other contracts pleaded, but not in writing, such promises being comprehended under the general averment, of a promise to pay a sum larger than the aggregate of both items, intended and sufficient to cover both sums sued for.   (p. 250).

3. SAME—*Declaration—Special Count—Sufficiency Against Demurrer—Interest.*

    Nor is such count bad on demurrer, because it avers a promise to to pay interest on the sum sued for from a date anterior to the making of the second of said contracts, interest being incident merely to the right to recover the principal sum sued for.   (p. 250).

4. CONTRACT—*Construction—"Contract of Entirety."*

    A contract to drive certain piling, at a stipulated price per pile, to make certain excavation for a coffer-dam, and to afterwards remove the embankment, at a stipulated price per cubic yard, and to provide a pump of sufficient capacity and efficiency to perform the contract, at a stipulated price per day, etc., is not a contract of entirety.   (p. 251).

5. ACTION—*Contracts—Right of Action—Evidence.*

    A tort may not be waived and assumpsit maintained thereon against a wrong doer, when the latter's estate has not been benefited thereby, as by the appropriation by him of plaintiff's property or the proceeds of the sale thereof, and evidence of such tort and damages to plaintiff therefrom, and not so benefiting the estate of defendant, should, in an action ex contractu against him, be rejected.   (p. 253).

6.  EVIDENCE—*Admissibility—Books of Account.*

  Point one of the syllabus in *West Virginia Architects and Build-ers* v. *Stewart,* 68 W. Va. 506, re-affirmed and applied, as justify-ing the admissibility of plaintiff's books of account in evidence to the jury.  (p. 256).

7.  SAME—*Admissibility—Admission—Compromise.*

  Admission by one of the parties of independent facts relating to plaintiff's claim, though made during the colloquium, or during a treaty for a compromise, are admissible in evidence, such admission not amounting to a proposition of compromise.  (p. 257).

8.  PLEADING—*Issues and Proof—Payments—Set-Off and Counterclaim.*

  In an action on an account, accruing to plaintiff under contracts, such as those sued on in this case, it is error to permit plaintiff, in the absence of counter off-sets filed by him, to prove that the pay-ments specified in defendant's bill of off-sets were properly applica-ble to other items of plaintiff's account, not covered by its bill of particulars.  Construing section 4, chapter 126, serial section 4824, Code 1913.  (p. 257).

9.  TRIAL—*Instructions—Applicability to Case—Compromise.*

  Where, as in this case, at least one of the items in the account sued for is covered by a contract of compromise between the parties, an instruction to the jury that such compromise is binding upon the parties thereto unless impeached for fraud, or because something has been inadvertently omitted therefrom, is properly given.  (p. 258).

10.  CONTRACTS—*Construction Contracts—Modification—Award of Arbi-trators.*

  The award of the arbitrators, Horstman and Burgess, made pend-ing the execution of plaintiff's contracts, requiring it to remove the coffer-dam embankment to the satisfaction of the government of the United States, omitting the other words of the original contract, requiring that work to be done to the satisfaction of defendant also, and the acceptance thereof by the parties, properly construed, did not constitute a modification of that provision of the original con-tract.  (p. 258).

11.  TRIAL—*Binding Instructions—Evidence.*

  A binding instruction is properly rejected which excludes the theory of one of the parties, and which the evidence tends in an appreciable degree to support.  (p. 261).

12.  ASSUMPSIT, ACTION OF—*Declaration—Quantum Meruit Count.*

  A quantum meruit count is now obsolete, and is no longer neces-sary in an action in assumpsit containing the common counts for work and labor done, etc.  (p. 262).

13.  CONTRACTS—*Partial Performance—Compensation.*

  Where a party to a contract fails to furnish a pumping outfit of

the capacity and efficiency called for by his contract, he is not entitled to recover the full price per diem stipulated therefor in the contract, but only such sum as the same is reasonably worth to the other party to the contract. (p. 262).

Error to Circuit Court, Wood County.

Action by the Parkersburg & Marietta Sand Company against Lloyd E. Smith. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*Moss, Marshall & Forrer* and *H. P. Camden,* for plaintiff in error.

*Thomas Coleman* and *Reese Blizzard,* for defendant in error.

MILLER, JUDGE:

On two special counts and the common counts in assumpsit, and on issues joined on the general and sundry special pleas, with special replications to some of said special pleas, plaintiff obtained the verdict and judgment for $8,280.49, complained of.

On writ of error defendant opposes to this judgment numerous assignments of error charged to have been committed on the trial below.

The first of these is that the trial court erroneously overruled his demurrer to the declaration and each count thereof. No point is made against the common counts. The first count pleads a first and a second or supplementary contract between plaintiff and defendant *in haec verba,* and performance thereof by plaintiff, and alleges that plaintiff was entitled to recover thereon from defendant the sum of $13,197.53, as shown by an itemized statement filed therewith, and designated "Amount due under written contracts." This count then pleads performance of certain other work, namely, the making of certain excavations, fillings, and embankments around and in a certain coffer-dam, and sinking certain piling, *and raising and repairing a certain boat,* in connection with the work done and performed by the plaintiff under said written contracts; and that at the special instance and request of defendant and for the consideration then and

there agreed to be paid by defendant to plaintiff, plaintiff also performed certain labor for defendant and furnished certain material, including piling and equipment, amounting to $791.69, according to an itemized account thereof also filed with the declaration and designated ''Account for work done not under writings.''

''By reason whereof'', it is alleged, defendant ''became indebted and liable to the said plaintiff in the said sum of Fifteen Thousand Dollars    *    *    *    with interest from the first day of August, 1910, until paid, and being so liable, the said defendant    *    *    *    in consideration thereof, afterwards, to-wit, on the ———— day of ————, 1912, undertook and promised to pay    *    *    *    plaintiff, the sum of $15,000.00, with interest as aforesaid, whenever the said defendant should be thereunto afterwards requested.''    And the allegation follows that not regarding his said promises and undertakings defendant, though often requested, had not as yet paid plaintiff said sum with interest as aforesaid, or any part thereof, but had wholly neglected to do so to the damage of plaintiff, $15,000.00.

The second count pleads that on the ———— day of August, 1912, after defendant had executed and delivered the contracts in writing aforesaid, and after plaintiff had done and performed all the labor and furnished all the material mentioned and set forth in the first count, at the special instance and request of defendant, defendant accounted with plaintiff ''of and concerning divers sums of money for said labor performed, and said material and equipment furnished, before that time and owing to plaintiff, and then in arrear and unpaid'', and that upon such accounting ''defendant    *    *    *    *    was found in arrear, and indebted to    *    *    *    *    plaintiff in the further sum of    *    *    *    *    *    $15,000.00'', and that being so indebted, and in consideration thereof, defendant ''undertook and then faithfully promised'' to pay plaintiff the said sum of money, when he should be thereunto afterwards requested, and as represented in the account thereof filed therewith, and that being so liable defendant in consideration thereof, on the ———— day of ————, 1912, undertook, etc., in the same manner as alleged in the first count.

The first point made against the first count is that it con-

tains no allegation of a promise to pay "the sum of ——————
dollars" alleged in a previous paragraph thereof to have
been due and owing plaintiff under the first or original con-
tract. We think there is no merit in this point. Immediately
following this averment it is alleged that owing to disputes
and controversies between the parties as to plaintiff's rights
under said first contract, the second or supplementary con-
tract pleaded was entered into, and then follows the allegation
above recited in relation to the liability and promises of
defendant under both contracts, and as to the amount accrued
to plaintiff thereunder and the promises of defendant alleged,
etc. We think these averments sufficient to satisfy all re-
quirements of good pleading.

The point is also made against those averments that there
are no distinct allegations of a promise to pay the sum of
$13,197.53, accrued under the contracts in writing, and the
sum of $791.69, accrued under the contracts not in writing,
but only of the sum of $15,000.00, and which said two sums
do not aggregate the sum of $15,000.00, alleged to have
accrued and been demanded. We see no substantive merit in
this point.

It is unnecessary to aver a promise to pay each individual
sum demanded. The averment of the promise to pay the
aggregate of all the sums demanded is certainly sufficient,
and though in this case there is no promise to pay the exact
aggregate of the two sums demanded, it is plainly to be seen
that the intention was to cover the aggregate of these sums
by the promise to pay the sum of $15,000.00. We know of
no authority, and none is cited, for the proposition that the
averment of the amount promised must exactly equal the
aggregate of the different items demanded. No such strict
rule is known to us when applied to an action of assumpsit.

Another point is that the averment of the promise to pay
interest from the first day of August, 1910, a date anterior
to the making of the second or supplementary agreement,
and a date anterior to the date of the work done under the
contract and covered by the bill of particulars filed, is an
impossible date, rendering the first two counts bad. We see
no merit in this proposition. The averment of time from
which interest is to run is an immaterial averment, and if

Minor, Inst., Part II, 1175, cited, is inapplicable. Unless there is an express contract to pay interest it does not form the basis of the action, but becomes an incident only to the recovery of the principal debt. *Bennett* v. *Federal Coal & Coke Co.,* 70 W. Va. 456. Here there was no express contract to pay interest, and interest therefore was a mere incident to the recovery of the principal sum sued for, and the damage laid in the declaration constituted a sufficient cloak to cover that interest.

Some other points of demurrer are noted, but they are practically conceded to be without merit, as duplicity, etc., and will not be further regarded on this hearing. The same points are covered by other points of error, and they will have consideration in disposing of them.

The second point of error is the rejection of defendant's special plea number one. This plea is based upon the theory of the entirety of the contract pleaded, and proposes to recoup in damages certain losses of interest, and damages sustained by defendant by being obliged to pay plaintiff over and over again for doing the same work contracted to be done by it, and damages sustained by defendant from delay by plaintiff in the execution of its contract.

By the terms of the contract plaintiff agreed with defendant to drive all steel sheet piling and all wooden piling, and do all the excavating called for by the contract of the defendant with the City of Parkersburg, in the construction of a filtration plant in the Ohio river, and to use such of the material excavated as was necessary to bank the coffer, and to furnish all washed sand and gravel to be used in the construction of the filter beds and to place the same over the strainers and pipes therein as called for by the plans and specifications, at the stipulated price per pile for driving the piling, and a stipulated price per cubic yard for excavating and for the sand and gravel furnished, and for removing the material used in banking the coffer, and also to furnish at its own expense a complete pumping outfit, consisting of one six inch pump and one ten inch pump, of sufficient capacity and efficiency, to pump out and keep pumped out the coffer-dam during the work of the construction of said filtration plant, and so that said work of construction might proceed

without delay on account of water in said coffer-dam, and to furnish a plant of capacity equal to the work, and to prosecute the work to the full capacity of the plant; and it is averred that by reason of such contract it thereby became the duty of plaintiff to construct a reasonably safe and secure coffer-dam around filter beds number four and five of said filtration plant, so as to keep out of them all water, except such as could not be kept out by a reasonably safe and secure coffer-dam; and it is further averred that it became the duty of the plaintiff to maintain at its own expense said coffer-dam during said work of construction, in a reasonably safe and secure condition as aforesaid; and that the plaintiff breached this contract as to said filter beds number four and five, in that it did not construct said coffer-dam in a skillful and workmanlike manner; that the piling were not properly driven, and a large part of it was not driven to reasonable depths in the bed of the river, and was driven in such a manner that it fell down, by reason whereof the coffer-dam leaked continuously, etc., and by reason whereof defendant was not able to proceed with that part of the work of construction without great delay on account of the water, during the seasons of 1911 and 1912, wherefore he sustained the damages sought to be recouped against the plaintiff's demand against him.

We have examined all the authorities cited by counsel in support of their theory of the entirety of the contract sued on. In our opinion they do not support the proposition. Plaintiff did not undertake by its contract to build or maintain a coffer-dam. It agreed to drive the piling at a stipulated price for each pile, and to do the excavating and remove the embankment and back fill of the filter beds at so much per cubic yard, and to furnish a pumping outfit at so much per day for each day the pumping plant was employed, and this was the extent of its undertaking. For breach of these several conditions of its contract plaintiff would undoubtedly be liable to defendant in damages, but if it performed its contract faithfully it would not be liable to maintain at its own expense the coffer-dam and so forth, as alleged, as if upon a contract of entirety. Many of the authorites cited for the proposition involve the building of houses for a stipulated

price, and for the performance of other contracts of entirety. The case most relied upon by counsel, perhaps, is that of *Boyle* v. *Agawam Canal Co.*, 22 Pick. 381, 33 Am. Dec. 749. While in that case the contract was to be done at so much per cubic yard for excavation and embankment, it nevertheless called for the construction of a certain portion of the Agawam canal by a certain date. The contract called for the entire construction of that portion of the canal. That contract, we think, was properly held to be a contract of entirety, and that the contractor was thereby obliged to repair the embankment swept away by the flood during the progress of the work. But we have no such contracts involved in the case at bar. So we think plea number one was properly rejected, and there was no error therein.

The third point of error is that the court below improperly permitted C. D. Dotson, president of the plaintiff company, to give in evidence testimony as to the amount of damages claimed for sinking the pump boat, and as stated in the bill of particulars, "to expenses incurred in raising and repairing pump boat sunk Oct. 23, 1912, $190.94." This item is one of the items sought to be covered by the allegation in the first count for "raising and repairing a certain boat", and covered into the aggregate of $791.69, sued for.

Three points are made by counsel against the introduction of this evidence. First, that the declaration contains no sufficient allegation on which to predicate the claim; second, that if sufficiently declared for, there would be a misjoinder of counts, and the declaration would be bad on demurrer.

The evidence of the witnesses tending to show a cause of action, if any, shows one arising out of tort and not ex contractu, and third, that there can be no recovery in an action of assumpsit for damages for a mere wrong.

If, as assumed in the third proposition, the wrong and injury complained of is such that the tort cannot be waived and assumpsit maintained for the damage done, the declaration would not be sufficient; and if a count ex delicto be joined with one ex contractu the declaration would be rendered bad on demurrer, and the first and second propositions of counsel would be well founded.

The rule which has the support of our decisions, as well

as of the decisions of most of the states, is, that tort may not be waived, and an action maintained as upon an implied contract to pay the damages sustained, unless the defendant's estate has been benefited thereby, as by the appropriation of plaintiff's property, or the proceeds of the sale thereof, and that for mere damages sustained for wrong and injuries done to the person or property resulting in no pecuniary benefit to the estate of the defendant, assumpsit will not lie. Burk's Pleading & Practice, section 85, page 121; *Wilson* v. *Shrader,* 73 W. Va. 105, 79 S. E. 1083, 1086; *Walker* v. *Railway Co.,* 67 W. Va. 273, 277; *Webster* v. *Drinkwater,* (Me.) 17 Am. Dec. 238, and note. In this note the annotator refers to and quotes from a note by Mr. Nicholas Hill to the two cases of *Putnam* v. *Wise,* 1 Hill, 240, and *Berly* v. *Taylor,* 5 *Id.* 584, to the contrary. But whatever the rule may be elsewhere our decisions are certainly in accord with the great weight of authority, as fully shown by the note of Mr. Freeman to the principal case.

The question then occurs, does the evidence of the witness Dotson, denied by defendant, present a case for damages cognizable in assumpsit. The boat in question was the pump boat which plaintiff had furnished under its contract, not for the use of the defendant, but to be used by it under its contract to pump out and keep pumped out the coffer-dam, during the construction of the filtration plant. Defendant had no control or right of control over the boat or over the plaintiff or any of its employees in the operation thereof. In response to a question respecting the item under consideration, Dotson answered in substance, that while in Pittsburg attending a lawsuit, on October 22nd, considerable rain had fallen in the country; that in the morning following this rain witness called up the defendant by telephone, told him of the rainfall in Beaver river and below Beaver, and asked him if it would not be advisable to break connections on these pumps and flood the coffer; that Smith replied that he would do it, and that he went over and notified some of witness' men in charge, that he expected to do that, and that these men did a part of it, and did break the connection on the six inch pump in the hole where the excavation was done for the filter bed; that witness got home about eleven o'clock

on that day on a belated train; that along in the morning
some time defendant called witness up and told him that the
coffer-dam had collapsed and that the pump boat had gone
down on the inside of it; that he then inquired of him why
he had not flooded the coffer as he ought to have done, and
that he replied, "we thought we could hold the water out."
The rest of witness' testimony relates to what he himself
afterwards did in raising the boat, dismantling her of her
machinery, and making the necessary repairs, putting the
machinery back, etc., and the cost thereof covered by the
item in controversy. Objection to all this testimony was
saved by a proper bill of exceptions, and it is now contended
that it was improperly admitted upon any issue presented in
the case, and for the reasons assigned.

So far as we can see there is nothing in this evidence show-
ing or tending to show any contractual relations between
plaintiff and defendant by which the latter was bound to
look after or disconnect the plaintiff's boat. Defendant, accord-
ing to this evidence, was not in charge of plaintiff's boat. If it
was his duty to flood the coffer and save plaintiff's boat from
injury, it did not grow out of any contract to do so, and his
failure to do so in no wise increased or added to defendant's
estate, implying a promise on his part to pay damages. There
is nothing showing or tending to show that defendant did not
deliver to Dotson's men the message communicated through
defendant, and he was under no contractual relation to do so.
Moreover, the testimony of other witnesses for plaintiff, his
employees in charge of the boat, shows that they were in
charge of it, and that they had the right to disconnect the
boat. They were not bound to obey any orders of the defend-
ant, if given, which is denied, for he says that he was not
even present when the coffer collapsed and the boat sank.
Of course the fact if material was one on conflicting evidence
for jury determination. But if what these witnesses say, in
connection with the evidence of Dotson, as to the conduct of
the defendant, was true, that conduct amounted to nothing
more than a wrong done, not benefiting the estate of the
defendant, and if defendant was liable therefor it was ex
delicto and not ex contractu, and damages resulting to plain-
tiff therefrom were not, under the authorities cited, recover-

able in assumpsit. Wherefore, in our opinion, the evidence was improperly received and ought to have been rejected.

The fourth point of error is that the court improperly admitted in evidence plaintiff's book of accounts, containing its account against defendant. In connection with its ledger plaintiff introduced a so called invoice book, proven by the witness, Mrs. C. D. Dotson, bookkeeper, both books being introduced in evidence in connection with her testimony, to show the items of the account. The objection to the introduction of these books was that the entries were not made therein contemporaneous with the facts to which they relate, and that the entrant, the bookkeeper, did not have personal knowledge of the transactions recorded. The rule stated here, in the most recent decisions on the subject is, that: "Books of original entry of a contractor and builder kept by a bookkeeper, who, according to an established system or method of transacting the business, records the oral or written reports made to him by one or more persons in the regular course of business, of transactions lying in the personal knowledge of the latter, whether such bookkeeper have personal knowledge of such transactions or not, are admissible in evidence in connection with the testimony of such bookkeeper showing the regularity of the entries therein by him, to prove an account therein, without the evidence of the 'witnesses having personal knowledge of the transactions, provided the testimony of such witnesses, because of death, interest, incompetency, absence, inconvenience, or otherwise be unavailing." *West Virginia Architects and Builders* v. *Stewart*, 68 W. Va. 506.

We have examined the testimony of Mr. and Mrs. Dotson, and the testimony of the workmen on the plant, and while the evidence of Mrs. Dotson shows that she did not always promptly make the entries at the time the facts were reported to her by her husband, yet they were made as promptly perhaps as it was convenient to make them, owing to the character of the business, and the witnesses swear positively as to the substantial accuracy of the items. As to the larger of the items there is no controversy. The case does not stand alone on the evidence of the books, independently of the witnesses concerned in the transaction. So we think the books were

admissible in connection with the oral testimony of the witnesses verifying the same, under the rule laid down in the cases referred to and other cases cited by counsel. This point must, therefore, be overruled.

The fifth point of error is that the court below improperly admitted the testimony of Thomas Coleman and C. D. Dotson, to the effect that on one occasion when an effort was being made to compromise the matters in difference between the parties the defendant had stated that there were but two of the items in plaintiff's account which he controverted, specifying them. It is contended that these alleged admissions, being objected to, were inadmissible, because they constituted offers of compromise, and that as a general rule such propositions are inadmissible when they have proven abortive. But we do not think these admissions were of that character. They were admissions of independent facts, and though they may have been made during the treaty for compromise, they are not inadmissible on that ground. The authorities cited by counsel do not support their proposition, but the contrary thereof. *West* v. *Smith,* 101 U. S. 263; 2 Jones on Evidence, (Blue Book Ed.) section 291 (293); *Brown* v. *Shields,* 6 Leigh 440; 1 Greenleaf on Evidence, (16th Ed.) 322; *Lovett* v. *West Virginia Central Gas Co.,* 73 W. Va. 40, 79 S. E. 1007.

Nor was there any error committed in refusing to allow the defendant to testify, in response to the question as to whether or not he waived anything on the occasion of such proposed compromise. The record does not show a proffer on the part of the defendant as to what the witness would answer, and there was no reversible error for this, if for no other reason. *Delmar Oil Co.* v. *Bartlett,* 62 W. Va. 700; *Lord & McCracken* v. *Henderson,* 65 W. Va. 322, 325.

The sixth point of error relied on is, that the court erred in permitting the witness Dotson to state that the items in the defendant's bill of sets-off, admitted by him and by his counsel to have been paid, covered items which had not been charged in plaintiff's declaration, or sought to be recovered; that those items had been excluded, and that defendant had been given credit therefor. And furthermore that it was error, having admitted this evidence, to exclude the testimony

of the defendant that there was no other account except the account sued on to which his off-sets were applicable. In connection with the proffer of this evidence defendant's counsel stated that it was not claimed that there was any other account. The point is made that plaintiff pleaded the two contracts in writing, and certain other contracts not in writing, and filed bills of particulars covering each, and as the defendant's bill of sets-off filed were or were claimed to be payments on plaintiff's account, and were admitted to be payments upon the work done under the contract alleged, plaintiff could not properly be permitted to swear generally that those payments and off-sets were applied and properly applicable to work done under the contract not covered by the account sued for, without specifications of counter off-sets. In our opinion this point of error is well taken, and must be affirmed. In our opinion a proper construction of section 4, chaper 126, serial section 4824, Code 1913, relating to the subject of off-sets, so provides.

The seventh point of error is that the court erred in giving to the jury plaintiff's instruction number six, to the effect, that if they believed that there was at any time a compromise of all the matters then in difference between them, then the parties were bound by such compromise, and neither would be allowed to go back thereof except for fraud, or because of something inadvertently omitted therefrom. It is contended that this instruction violated the rule of *Rowan & Co.* v. *Hull*, 55 W. Va. 335, that an instruction without evidence covering the subject thereof is improper, and that there was no evidence of a compromise of the matters in difference in this suit.

In our opinion the point is not well founded. The second or supplementary agreement pleaded covered some of the matters in difference, and the award of the arbitrators, Horstman and Burgess, of August 21, 1912, which was accepted by the parties in writing, covers at least one of the items, 4082 cubic yards, banking around sections 1, 2, and 3, of the filtration plant. This is the first item in the account sued for. There may be other items covered thereby; whether so or not is immaterial. The instruction was general and was applicable at least to this and any other items covered

by the award, and the supplemental contract. While an award is not strictly speaking a compromise, nevertheless, when accepted by the parties, it bound them in like manner, and the jury could not have been misled by the instruction.

The eighth point is that the court erred in giving plaintiff's instruction number nine; and another point of error made, which should be considered in the same connection, is the rejection of defendant's instruction number five, which was in effect the converse of plaintiff's instruction number nine. By the latter the jury were told that if they believed from the evidence that defendant took charge of plaintiff's pump boat in October, 1912, and without authority assumed control and management thereof contrary to the advice of Dotson, president, and of plaintiff's employees, and failed to flood the coffer-dam, and by reason thereof the defendant caused the coffer-dam to give way and said pump boat to sink, the plaintiff was entitled to recover from defendant the costs of raising and repairing said boat.

We do not think that any of the evidence justified this instruction. And, moreover, the cause of action, if any, was ex delicto, not ex contractu, express or implied, and the court improperly rejected defendant's instruction number five, saying that upon the pleadings in the case the jury could not allow plaintiff the sum of $190.00, or any sum, for injuries to its pump boat. The authorities above cited for the proposition that the court below improperly received the testimony of the witness Dotson, in relation to the sinking of this pump boat, we think fully support our conclusion upon each of these instructions.

The next or ninth point of error is the giving of plaintiff's instruction number twelve. The objection to this instruction is based on defendant's theory of the entirety of the contract. We see no error in the instruction on plaintiff's theory of the case.

The next or tenth point relied on is the giving of plaintiff's instruction number thirteen. This instruction told the jury that under the contract defendant could not arbitrarily and unreasonably withhold his approval of the performance of the contract by the plaintiff, and that if the jury believed from the evidence that plaintiff and defendant accepted the

terms of a supposed compromise agreement, made on August 21, 1912, whereby among other things defendant was to pay for removing the coffer-dam embankment, when it should be removed to the satisfaction of the government of the United States, as provided in the original contract between the parties, then the plaintiff was entitled to recover from the defendant for removing said material to the satisfaction of the government of the United States, whether the defendant was satisfied therewith or not, and that it was the duty of the jury to find for the plaintiff therefor such sum as was agreed upon, if any, in said compromise, with interest from the date the United States government became satisfied therewith.

The supposed compromise on which this instruction was based is the award of the arbitrators, Horstman and Burgess, and the settlement between the parties made on August 22, 1912, pursuant thereto. By their award 4082 cubic yards of embankment to be removed from around sections 1, 2, and 3, were awarded "to be paid for when all material has been removed to the satisfaction of the Government of the United States in accordance with the terms of the original contract covering the construction of the work." The contract referred to by the arbitrators provided that this embankment was to be removed not only to the satisfaction of the government of the United States, but to the satisfaction of the defendant also. The contract of the defendant with the City of Parkersburg, referred to and made a part of the contract between plaintiff and defendant, shows that defendant was vitally interested in the subject of the removal of this embankment. By it he was under contract and bond to furnish a filtration plant of a certain capacity, and producing a specific quality of water, and the removal of said embankment, if not to his reasonable satisfaction, might greatly prejudice him, and affect the proper performance of his contract with said city. The government might be satisfied with dumping this material at a place where it would greatly damage the defendant in the performance of his contract with the city, and we cannot construe this award as intended to waive defendant's rights under the terms of the original contract. True, he could not arbitrarily withhold approval when the work of removing the

embankment was done to his reasonable satisfaction. For these reasons we think the instruction should have been. rejected.

The next or eleventh point of error is that the court improperly rejected the defendant's instructions numbered two and eight. These are binding instructions, and the effect of them was to tell the jury that it was the duty of the plaintiff, under the contract, to drive the piling as directed by the defendant, in a substantial and workmanlike manner, and not negligently or carelessly, and if negligently and carelessly done and not done in a substantial and workmanlike manner, and that by reason thereof more material was employed in the embankment around sections four and five than would otherwise have been necessary, plaintiff would only be entitled to recover for removing such material as would have been necessary had the piling been driven as directed in a substantial and workmanlike manner.

These instructions, in the form presented, we think, were properly rejected. They ignore the theory of plaintiff, which the evidence in some degree at least tends to support, that the excess of embankment was due to the express direction of the defendant, or his duly authorized agents or representatives in charge of the work. Instruction ''A'', given by the court at its own instance, substantially covers the subject of these two instructions, with the omitted theory of the plaintiff inserted. Wherefore, no error to the prejudice of the defendant was committed in rejecting his instructions.

The last or twelfth point of error is the rejection of defendant's instructions numbered nine and ten. As noted at the foot of instruction number ten, the court was requested to refuse it if number nine was given. The effect of instruction number nine was to tell the jury, that if the plaintiff failed to furnish a pumping outfit of the capacity and efficiency called for by the contract, and to pump out and keep pumped out the coffer-dam as required thereby, then plaintiff was not entitled to recover anything for the use of said pumping outfit. This instruction relating to plaintiff's failure to furnish a pumping outfit and to do the work of pumping, as required by the contract, is not covered by court's instruction ''A'', referred to, which related only to the right of plaintiff

to recover for removing the embankment, and it would have precluded the right of the plaintiff to recover anything for the use of the pumping outfit, no matter how valuable the same may have been to the defendant.

Defendant's counsel predicate the proposition contained in this instruction on the theory that there is no *quantum meruit* count in the declaration. This ancient count has long since been abolished, or become obsolete in fact. The value of the pumping outfit and labor performed or work done therewith is fully covered by the common counts for services and work done and materials furnished by the plaintiff. 1 Chitty on Pleading, (11th Am. Ed.) star page 341; 4 Minor, Inst., Part I, 699. We think, therefore, that instruction number nine was properly rejected.

The effect of instruction number ten would have been to tell the jury that if they believed from the evidence that the plaintiff under its contract furnished a pumping outfit not of the capacity and efficiency called for, but one that did not come up to the requirements of the contract, and that by reason thereof plaintiff did not keep said coffer-dam pumped out, then it was not entitled to recover the price per day stipulated in the contract, and as charged in the bill of particulars filed, but was entitled to recover only so much as said pumping outfit was reasonably worth to the defendant.

We think defendant was entitled to this instruction. If the pumping outfit was not of the capacity and efficiency called for by the contract, and for this reason plaintiff did not and could not pump out and keep pumped out the coffer-dam as required by the contract, it was not entitled to recover the full compensation stipulated in the contract, although the use and service thereof may have been of some value to the defendant. This proposition could in no way be affected by the theory of the plaintiff that the pumping outfit was of the proper capacity and efficiency and that its failure to pump out and keep pumped out the coffer-dam was due to the negligence or interference of the defendant.

For the errors aforesaid committed on the trial we are of opinion to reverse the judgment and award the defendant a new trial, and it will be so ordered.

*Reversed, and new trial awarded.*