PETROPLUS, JUDGE:
Claimants, R. C. Wetherall, Jr., and Paul Price, of Huntington, West Virginia, filed a claim in the amount of $20,847.75 on July 16, 1968, representing a balance alleged to be due on a dam and highway construction contract with The State Road Commission of West Virginia dated October 28, 1960, covering a project designated as Castleman Run Road in the Counties of Brooke and Ohio, being Project No. 5824 and 7645. The contract was awarded to Paul Price on the basis of unit bid prices for quantities estimated by The State Road Commission and the Conservation Commission of West Virginia, respectively, for each phase of the project (1) highway construction and (2) dam construction, which quantities are subject to be increased or decreased according to the requirements of the Project. Earth material for the dam was to come from suitable material excavated from the roadway on the Road Commis *2 sion’s right-of-way and was to be hauled to the dam site on a recreational area furnished by the Conservation Commission. The work in controversy is listed on 'the Bid Proposal under the title “DAM AND CAUSEWAY” as Item 3, Borrow Pit Excavation, for an estimated quantity of 42,700 cubic yards at a unit bid price of 50$ per CY. The estimate for this item was made by the Conservation Commission, which by agreement with State Road Commission undertook the work through the facilities of the Road Commission, as provided by Chapter 20, Article 5, Part II, of the West Virginia Code, relating to the construction of slack-water dams in connection with the construction of public highways so as to create reservoirs, ponds, lakes or other incidental works to conserve the water supply of the State. The Director of the Conservation Commission, in cooperation with the State Road Commissioner, was charged by Statute with the preparation of plans, specifications and estimates for the construction of such dams. Although the State Road Commissioner was to award the contract for the combined project, the Statute contemplated that the cost of the dam would be apportioned and paid from available funds of the Conservation Commission. It is undisputed that the Conservation Commission, now the Department of Natural Resources, paid an allocated share for the dam project to the State Road Commission in the amount of $52,200.00. The Court considers this quite significant in deciding the controversy giving rise to this claim.
The contract between the contractor, Paul Price, and the State Road Commission consisted of the proposal upon the Commission’s form, the contract instrument, the Special Provisions to said contract designated as “Technical Specifications”, the plans 'and drawings, consisting of two separate sets prepared by the Engineers of the respective Departments, and the “Standard Specifications, Roads and Bridges, of the State Road Commission of West Virginia, Adopted 1952”. The latter is a bound volume which has no specifications for the construction of dams. The two projects, although combined in one contract awarded by competitive bid, are designated separately in the contract and the estimated quantities of work, services, labor and material at agreed unit prices appear in separate classifications for each project. The total esti *3 mated contract price was in the amount of $134,895.50, and Item 3, Borrow Pit Excavation, under the Dam and Causeway title was $21,350.00 for an estimated quantity of 42,700 cubic yards at the unit bid price of 50$ per cubic yard. Contractor Price on November 29, 1960, entered into a written Agreement with It. C. Wetherall, Jr., employing the latter to supervise, direct and oversee the performance of the requirements of the principal contract, for a formalized compensation for each of them after payment for labor, material, equipment and other expenses.
A note appears in the Contractor’s Proposal under the dam project stating that the dam and causeway are to be constructed of selected borrow material obtained from the roadway excavation, core trench excavation, and spillway excavation (emphasis supplied). The material, according to this note, was to meet the specifications of the Conservation Commission of West Virginia, Item 3 (designated Borrow Pit Excavation in the Technical Specifications of the Conservation Commission), and the cost of selecting and segregating the material, hauling, placing, compacting, and all work necessary in completing the dam and causeway fill was to be included in the unit cost bid for Item 3 (Borrow Pit Excavation) and Item 6 (Causeway Embankment Fill).
The item of “Unclassified Excavation” appears only under the roadway portion of the proposal and is estimated at 56,600 cubic yards at a bid price of 60$ per cubic yard.
The contract covered (1) highway construction for the Road Commission on its right-of-way, 'and (2) the slack-water dam and causeway on the recreational area property of the Conservation Commission adjoining the Road Commission’s right-of-way.
During the progress of the construction work, monthly estimates were prepared and furnished by the Respondent, 'and payment was made progressively for the dam embankment work under the item designated “Borrow Pit Excavation” and for the highway construction under the item designated “Unclassified Excavation”. In the Sixteenth and Final Estimate (revised) 41,695.50 cubic yards carried to dam construction at 50$ per cubic yard was deleted and added to “Unclassified *4 Excavation”, Item 2 of the Road project, increasing that item from a planned quantity of 56,600 cubic yards to 115,373.2 cubic yards or an overrun of 58,773.2 cubic yards, 'at 60^ per cubic yard. This back-charge of amounts previously paid on monthly estimates for the construction of the dam embankment to amounts acknowledgedly due on highway construction gives rise to this claim, it being contended that by deleting the item of Borrow Pit Excavation the Road Commission abolished the contractor’s payment for all his work in building the dam, and paid for yardage under Unclassified Excavation which the Contractor was entitled to receive under that item even though no dam had been built. It is the contention of the claimants that if they are to be paid for the building of the dam they must be paid under some item other than Unclassified Excavation, and that item is Borrow Pit Excavation.
The Respondent Road Commission answers: First: Claimant Wetherall has no contract with the Road Commission, 'and admittedly was an employee of Claimant Price by virtue of a private agreement between them, and therefore is not a proper party to this proceeding. Second: The Claimant Contractor has been paid for the 41,695.5 cubic yards of borrow pit excavation under the bid item of Unclassified Excavation at 60(i per cubic yard, rather than 50^5 per cubic yard under the item of Borrow Pit Excavation. Further that at the time the contract was awarded, it was indicated that the Contractor would take his borrow excavation from a borrow pit area above the anticipated dam, but instead secured all of his material which he placed on the dam embankment from the roadway excavation and from a slide which had occurred on the highway right-of-way. A letter of Claimant Price to the Road Commission (Respondent’s Exhibit 2) dated July 5, 1961, is assigned as the reason for revising the Sixteenth and Final Estimate in August, 1963, deleting the item of Borrow Pit Excavation. The letter stated:
“I feel that the dirt that is taken out of the roadway slide should be paid for by unclassified excavation at .60 per C.Y. instead of Borrow Pit Excavation at .50 per C.Y. It was my understanding that anything that was taken out of the slide on the roadway was to be paid for by unclassified excavation at .60 per C.Y.”
*5 This Court was created by the Legislature to consider claims which, but for the constitutional immunity of the State from suit, could be maintained in the regular Courts of the State. Jurisdiction is extended to claims which the State as a soverign commonwealth should in equity and good conscience discharge and pay. The Court is not bound by the usual common law or statutory rules of evidence. Inasmuch as the contractor Price is a proper party claimant, it is difficult for us to see how the Respondent may be prejudiced by permitting the Claimant Wetherall to be joined as a party in the Notice of Claim filed herein, even though he is not a recognized subcontractor by the State Road Commissioner. He has a substantial beneficial interest in this claim by virtue of his contract of employment with Price, and justice would not be accomplished by dismissing him on technical grounds. He is the person who performed the work that benefitted the State, and to whom the State is “morally” obligated. All of the work covered by the contract has been accepted and approved by the Road Commission, and the dam has been accepted and approved by the Conservation Commission.
After a careful consideration of the contract documents, the pleadings, exhibits and evidence adduced, we are of the opinion to award the Claimants the sum of $20,847.75 for the measured quantity of 41,695.5 cubic yards of Borrow Pit Excavation at 50$ per cubic yard for the construction of the dam embankment and the services, operations and work involved in selecting, segregating, hauling, placing and compacting the material which went into the building of the dam in accordance with the technical specifications of the Conservation Commission. In our opinion, the excavation of material from the highway construction is an additional pay item under the item of Unclassified Excavation, and would have been a com-pensable item even though no dam had been built as a part of the project. The Road Commission’s own witness, John W. Chamberlain, Supervisor of the Project, testified that the Contractor would have been paid for the same amount of Unclassified Excavation (115, 373.2 CY at the bid price of 60$ per cubic yard) if the project had been limited to the roadway construction.
*6 It persuasively appears from the evidence and the technical specifications, as well as the Bid Proposal, that it was contemplated by the parties that the material from the roadway excavation would be available and used for the dam construction. Insofar as the specifications and plans of the Conservation Commission were concerned, borrow pit excavation was all material borrowed from the site of the road project or from borrow pits in adjacent areas. The Plans of the Conservation Commission (Claimants’ Exhibit No. 6) clearly set forth by note:
“Dam and causeway are to be constructed of selected borrow material from the roadway excavation, core trench excavation, and spillway excavation. This material shall meet the specifications of the Conservation Commission of West Virginia Item 3 and shall be placed in accordance to their specifications. The cost of selecting, and segregating the material, hauling, placing, compacting, and all work necessary in completing the dam and causeway fill shall be included in the unit cost bid for Item 3 and Item 8.”
The same language appears in the Bid Proposal of the Contractor. Plans govern over specifications where there may be discrepancies, and special provisions have precedence over both plans and specifications.
We construe the contract to cover separate projects combined in one contract by virtue of the statutory law of the State (Chapter 20, Article 5, Part II, Official Code of West Virginia) relating to the construction of slack-water dams together with public highways as a conservation measure. The economies of a unified and integrated project are apparent, and are taken into consideration by the competitive bidders, but basically they are severable projects, separately engineered and separate specifications apply to each. The earth moving features of each project differ, and the work, operations and services performed for each project in placing or removing material from place to place certainly differ.
The rule on severable contracts is stated in Vol. 17, Am. Jur.2d, Sec. 325, as:
“No formula has been devised which furnishes a test for determining in all cases what contracts are severable and what are entire. The primary criterion for determining *7 the question is the intention of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, ‘and by the circumstances of the particular transaction giving rise to the question.”
In this same connection, Michie’s Jurisprudence, Vol. 4, Sec. 4, states the rule:
“A contract is entire and not severable when, by its terms, nature and purposes, it contemplates and intends that each and all of its parts, material provisions and the consideration are common each to the other and interdependent.”
The West Virginia Supreme Court of Appeals in Parkersburg and Marietta Sand Co., v. Smith, 76 W. Va. 246, 85 S.E. 516, (1915) held that a contract was severable in a case involving a project to drive certain piling at a stipulated price per pile, to make an excavation for a cofferdam, and afterwards to remove an embankment at a stipulated price per cubic yard, and to provide a pump at a stipulated price per day.
We conclude that the contract in this case is severable and encompassed two divisible projects, payment for which was to be received on the basis of unit prices assigned to each project.
Under 1.7.13 of the Standard Specifications for Roads and Bridges, the Road Commission concededly is not precluded or estopped by any measurement, estimate or certificate made before or after the completion and acceptance of the work from showing the true amount and character of the work. But Specification 1.4.2. of the same Standard does not permit the complete deletion of a major item, defining a major item as one whose total cost is equal to or greater than 10% of the total original contract. This item of Borrow Pit Excavation was much more than 10% of the total contract price.
It appears unconscionable for the State Road Commission to collect from the Conservation Commission the sum of $52,200.00, as its apportioned cost of the combined project, and pay to the contractor a sum substantially less as the apportioned cost of the dam and causeway, by deleting a major item of the contract. This case illustrates the inherent risks in combining projects to effect economies when the projects are separately *8 treated in the specifications, and costs are calculated for different work and services under unit bid items that may-overlap in whole or in part. Borrow material is ordinarily material brought on to the project site for the completion of the project, when material excavated from the project is insufficient to accomplish the purpose. If we treat this contract as severable, and the specifications certainly constrain us to do so, the material that went into the dam was borrowed from the roadway excavation and slide, which were beyond the project site of the dam construction.
The letter of Price, on which the Road Commission placed great reliance for its position, is subject to variable interpretations, and did not activate the Road Commission to make a change in its monthly estimates until two years later. The letter did not say that the material excavated from the roadway and processed for use in the dam construction should not be compensable as Borrow Pit Excavation.
Piarían Dahmer, Engineer for the Department of Natural Resources, whose duty it was to see that Conservation Commission’s plans and specifications were followed, testified that the dam was constructed entirely out of -unclassified excavation material derived from the right-of-way, and that the material had to be graded, cleared of rock, moisture controlled, compacted and otherwise handled to meet specifications. We cannot ignore his uncontradicted statement that the pay item for this work was Item 3, Borrow Pit Excavation.
Accordingly, for the foregoing reasons, we are of opinion to allow this claim, and accordingly make an award of $20,847.75.
Award of $20,847.75.