# CHARLESTON.

WALKER *v.* NORFOLK & WESTERN RAILWAY CO.

## Decided March 22, 1910.

1. ACTION—*Waiver of Tort.*

   If a railroad company, without the knowledge or consent of the owner, takes the property of a contractor, left stored temporarily on its right of way, and appropriates the same to its own use in a manner indicating a claim of right in opposition to that of the owner, the latter may waive the tort and recover the value of the property taken in an action of *assumpsit.*

2. BAILMENT—*"Involuntary Bailee."*

   By such tortious taking of property by a railroad company, so left on its right of way, it does not become an involuntary bailee thereof and liable to account only as such, as by restoration of the property to the owner, and in damages for the use thereof. The owner may elect to waive the tort and sue for the value of his property.

Error to Circuit Court, Mingo County.

Action by D. F. Walker against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Holt & Duncan,* for plaintiff in error.

*W. H. Bronson,* for defendant in error.

MILLER, JUDGE:

In the court below plaintiff recovered a judgment for $1297.48, the value, as found by the jury, of one centrifugal pump, ten feet of rubber hose, and one hoisting engine, which he claimed had been tortiously taken from him by defendant, and used and appropriated to its use, without his knowledge or consent.

Waiving the tort plaintiff brought his action in *assumpsit* on the common counts, in one count thereof alleging the defendant to be indebted to him "in the like sum for the price of

goods, chattels and effects, consisting of one hoisting engine complete, one pump and fittings, and ten feet of rubber hose, before that time bargained and sold by the plaintiff to defendant at its request." A bill of particulars was also filed charging defendant, by items, with the alleged value of the property, amounting in all, with interest, to $1498.80.

The property in question had been owned in 1905 by the Walker Construction Co., a corporation, and used in sub-contract work on the railroad of defendant, and upon completion of its contract, was stored with other property belonging to it, on defendant's right of way, near where it had completed its contract.

The defendant contends, first, that plaintiff did not show title in himself, and right to sue, the right, if any, being in the Walker Construction Company, and not in him individually; second, that a promise to pay the value of the property, as distinguished from the value of the use thereof, can not be applied and made effective in an action of *assumpsit,* as attempted in this case.

On the first proposition the evidence of the plaintiff, uncontradicted is that he was the owner of fifty one of the one hundred shares of the capital stock, and had acquired from a Mr. Pedigo the other shares; that the affairs of the company had all been settled up, and that he had taken over all its property in settlement, about October, 1907, and that the company was no longer in business. This evidence, we think, showed plaintiff entitled to maintain the action in his individual name.

On the second proposition the evidence shows, that one Walker, an employee of defendant, in charge of a pumping station a half mile west of the point where plaintiff's company was at work, went to the place where plaintiff's company was at work, and without asking permission took the pump now sued for, and installed it in place of the pump defendant had in use there. After plaintiff's company had completed its work he wrote Walker to return the pump, but it was never returned. Before the institution of this suit, as the evidence shows, the pump had been picked up by the company's trainmen, near where it had been used, in a broken and worn out condition, and taken to Portsmouth and put on the junk pile. The piece of hose met a similar fate. The evidence respecting the hoist-

ing engine is that some time in May, 1906, the defendant loaded it on a flat car, without the knowledge or consent of plaintiff, or his company, hauled it to another point on its road, and installed it there, in place of one of its own, which had broken down, and where it appears, plaintiff, after some effort, finally located it. When he did find it in July, 1906, he made demand of the defendant for the value of his property, and sent them a bill. Defendant then offered to return it, which was declined, plaintiff having in the mean time supplied himself with another engine. After the exchange of a letter or two defendant's superintendent, August 25, 1906, wrote plaintiff, saying: "Please advise what you think is a fair price for the material we have used which belonged to you."

It is argued by defendant's counsel that plaintiff by leaving his property stored on defendant's right of way made it an involuntary bailee, of the class *depositum,* with right to move the property from place to place to suit its convenience. To have stated his proposition fully we think he should have added, "and to appropriate the same to its own use." Is the proposition as stated by counsel, or as modified by us to suit the facts, correct in law? A bailment signifies a contract, express or implied, resulting from delivery. The definition of Sir William Jones, as given by Story, is: "A delivery of goods on a condition, express or implied, that they shall be restored by the bailee to the bailor, or according to his directions, as soon as the purposes for which they are bailed shall be answered;" or "A delivery of good in trust, on a contract expressed or implied, that the trust shall be duly executed, and the goods redelivered, as soon as the time or use for which they were bailed shall have elapsed, or be performed." That of Blackstone is: "A delivery of goods in trust upon a contract, expressed or implied, that the trust shall be faithfully executed on the part of the bailee;" or as stated in another form: "Delivery of goods to another person for a particular use." Story on Bailments, section 2; 5 Cyc. 165. Mr. Kent, blending those two definitions, says: "Bailment is the delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered." 2 Kent Com. (14 Ed.) 559. Our case of *Coal Co.* v. *Richter,* 31 W. Va. 858, says: "Bailments

for the benefit of the bailor *depositum* or *mandatum* are founded upon express contract and require the assent of the bailee to make him responsible." In 5 Cyc. 165, it is said: "Since the duties and responsibilities of a bailee can not be thrust upon a person without his knowledge and against his consent, it is essential to a bailment that there be an acceptance of the subject matter." It is also said in the same connection: "It is not requisite that the acceptance be actual—one that is constructive being sufficient, as where a person comes into actual possession and control of a chattel fortuitously or by mistake, or takes possession of goods left rightfully by their owner and removes them to another place." The last class is stated upon the authority of *Tanner* v. *Chapman,* 75 Ga. 871, a case involving the removal by defendant of plaintiff's furniture, without authority from him, from a house where he had the right to leave it, and at his risk, and in which defendant was held liable in damages due to breakage by such removal. This is not that kind of a case. In Hale on Bailments 43, it is said: "No man can be made a bailee of another's property without his consent. The finder of goods lost is under no obligation to take them into custody; but if he voluntarily assumes the care of them, he is burdened with the liabilities of a depositary."

It is not claimed in this case that there was any actual delivery to or voluntary acceptance by defendant of the property in question, rendering it liable as upon an express or implied contract of bailment, but that it became an involuntary bailee, rendering it liable to account as such, and not for the tortious taking of the property. The authority relied on for this proposition is *Ryland & Rankin* v. *C. & O. Ry. Co.*, 55 W. Va. 181. That suit grew out of the contract of a common carrier of goods for hire, of the class *locatio conductio* and not *depositum.* Plaintiff sought to recover the value of the goods as lost, and though shown not to have been lost, we do not see that it is a case in point.

Did the storage of plaintiff's property on defendant's right of way amount to a delivery thereof to defendant as bailee; and did the tortious taking and appropriation thereof by it signify an implied acceptance thereof as bailee; or as claimed make it an involuntary bailee, relieving it of liability for the tortious taking thereof? We think not. We think defendant's

acts indicated a claim of right in opposition to that of plaintiff. Story on Bailments, section 44a, says of involuntary bailments: "There is another class of deposits, which may properly be called involuntary, as contradistinguished from necessary and voluntary, inasmuch as each of the latter presupposes some act of the depositor, whereas involuntary deposits may be without the assent or even knowledge, of the depositor." Hale on Bailments, p. 44, states the law of involuntary deposits thus: "There is another class of bailments by operation of law which Story aptly calls 'involuntary deposits.' These arise whenever the goods of one person have by an unavoidable casualty or accident been lodged upon another's land, as where lumber floating in a river is cast upon a neighbor's land by a sudden freshet and left there, or where goods are blown upon another's land by a tempest. The rights and liabilities of the parties in this class of cases are not very well settled. But it would seem that the owner of the land is a *quasi* bailee with liabilities similar to those of a finder of lost property. If he should refuse to deliver the goods to their owner or to permit him to remove them, he might be held liable for conversion." These definitions do not bring this case within that class of bailments. In this case the plaintiff cannot be said to be an involuntary depositor of his goods. He voluntarily left his property on defendant's right of way, but not in its custody nor by virtue of any contract of bailment with it, express or implied, nor with any intention of rendering it liable as bailee or otherwise for its safety. The acts of defendant in taking and appropriating the property in the manner shown in evidence were not the acts of a bailee of goods. It appropriated the property to its own use, in a manner wholly inconsistent with the obligations of a bailee.

Therefore we see nothing in the case differentiating it from the cases of *McDonald* v. *Peacemaker,* 5 W. Va. 439, and *Maloney* v. *Barr,* 27 W. Va. 381, holding that in such cases the owner may waive the tort and sue the wrongdoer in *assumpsit* for the value of the property taken. Other authorities cited for the same proposition are, 1 Barton's Law Pract., pp. 124-125; 15 Am. & Eng. Ency. L. 116 (2nd Ed.) and cases cited; *Terry* v. *Munger,* 121 N. Y. 161 (18 Am. St. Rep. 803); *Downs* v. *Finnegan,* 58 Minn. 113 (49 Am. St. R. 488);

and *Tidewater Quarry Co.* v. *Scott*, 105 Va. 160 (115 Am. St. R. 864).

The judgment below is therefore affirmed.

*Affirmed.*