**INGERSOLL–RAND FINANCIAL CORP., Plaintiff,**

v.

**James E. NUNLEY, Trustee, et al., Defendants.**

**Civ. A. No. 81–0023–B.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

June 8, 1981.

Matthew J. Cody, Jr., Lebanon, Va., for plaintiff.

James E. Nunley, Bristol, Va., Robert T. Copeland, Abingdon, Va., Mark M. Lawson, Bristol, Va., for defendants Chloe Creek Coal Co. and Eastern Resources, Inc.

No attorney for DMC.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiff, Ingersoll-Rand Financial Corporation (Ingersoll-Rand) appeals an order entered by the Bankruptcy Court for the Western District of Virginia holding that Ingersoll-Rand did not have a perfected lien on certain mining equipment. Jurisdiction of this court attaches pursuant to Section 405 of Title IV of the 1978 bankruptcy legislation.[1] For the reasons stated below, the opinion of the Bankruptcy Court is affirmed in part and reversed in part.

1. Section 405(c)(1)(C) provides:

During the transition period, an appeal from a judgment, order, or decree of a United States bankruptcy judge shall be to the district court for the district in which the bankruptcy judge sits.

*See generally* 1 Collier on Bankruptcy ¶ 7 (15th Ed. 1980).

## I. STATEMENT OF FACTS

The debtor in bankruptcy, Chloe Creek Corporation (Chloe Creek), a coal mining company chartered in Kentucky with its principal place of business in Grundy, Virginia, purchased certain mining equipment which was financed by Ingersoll-Rand. Pursuant to an assumption agreement between Chloe Creek and Ingersoll-Rand, Ingersoll-Rand filed its financing statement in Buchanan County, Virginia on 19 March 1979 and in Pike County, Kentucky on 13 April 1979.

Chloe Creek used the mining equipment for several months to mine coal at a deep mine in Kentucky. On 28 July 1979, Chloe Creek moved its mining operation and equipment to Clay County, West Virginia, where Chloe Creek used the equipment in a deep mine. In November 1979, another coal company, Eastern Resources, began using the Chloe Creek equipment to mine coal at the same site. Although the equipment remained in West Virginia until 28 February 1980, when the petition in bankruptcy was filed, no financing statement was ever recorded in West Virginia.

There was a verbal understanding between Chloe Creek and Eastern Resources that Eastern Resources would deduct certain payments from monies due to Chloe Creek, and would forward those payments to Ingersoll-Rand to be credited as payments on the Chloe Creek mining equipment. Payments were actually made by Eastern Resources from September through November 1979; no payments were made thereafter, either by Chloe Creek or Eastern Resources.

On the date of filing in bankruptcy, the trustee acquired the rights of a judgment lien creditor of Chloe Creek. 11 U.S.C. § 544(a) (1979) (App.). As a judgment lien creditor, the trustee's rights are superior to the rights of holders of unperfected security interests in Chloe Creek's property. See 11 U.S.C. § 544(a); Va.Code Ann. § 8.9-301(1)(b). At trial, Ingersoll-Rand contended it is a preferred lien creditor over the Trustee, and is entitled to the mining equipment, because the equipment is "mobile" within the meaning of UCC 9–103,[2] thus allowing Ingersoll-Rand to perfect its security interest in the equipment by filing a financing statement in the state where Chloe Creek had its principal place of business (Virginia). At the close of trial, the Bankruptcy Court permitted Ingersoll-Rand to amend its complaint to include a second theory of recovery: that Eastern Resources was a bailee of Chloe Creek, with notice of Ingersoll-Rand's security interest in the equipment, thus giving Ingersoll-Rand a perfected security interest within the meaning of UCC 9–305. (See Order of the Bankruptcy Court dated 8 September 1980).

Applying Virginia law, the Bankruptcy Court held that Ingersoll-Rand did not have a perfected security interest under either theory, and, therefore, that the Trustee was entitled to take possession of the mining equipment, making Ingersoll-Rand a general creditor. Ingersoll-Rand appeals that decision of the Bankruptcy Court.

## II. THE ISSUE OF MOBILITY

Applying Virginia law, Ingersoll-Rand argues that the mining equipment constitutes "mobile goods" within the meaning of UCC § 9–103 (Va.Code § 8.9–103), and therefore that once Ingersoll-Rand perfected its security interest in the mining equipment by filing in Chloe Creek's principal place of business state (Virginia), its security interest remained perfected when the equipment was moved from Kentucky to West Virginia. The Trustee contends that, first, West Virginia law, not Virginia law, applies, because the goods were located in West Virginia for the seven months preceding the filing in bankruptcy; and second, that the equipment is not "mobile" within the meaning of UCC § 9–103 (West Virginia Code § 46–9–103).

### A. CHOICE OF LAW

The Uniform Commercial Code generally has adopted the conflict of laws doctrine

---

**2.** For clarity, the commercial statutes shall be referred to throughout this opinion by the UCC section numbers rather than by state code sections.

that, absent an agreement between the parties as to the law governing their rights and duties, the court should apply the law of the jurisdiction where material contacts are centered. UCC § 1–105.[3] *See generally* White & Summers, Uniform Commercial Code § 22–9 (1972); LeFlar, American Conflicts Law (3d Ed. 1977). However, UCC § 9–103 states special rules which apply to secured transactions where the collateral is of a certain type or has been brought into a state subject to a security interest which attached in another jurisdiction. Section 9–103 provides that the law of the state where the collateral is located when the last event occurs on which is based the assertion that the security interest is perfected or unperfected shall apply.

In the case at bar, the collateral was located in West Virginia for the seven months prior to the Trustee's filing in bankruptcy. Ingersoll-Rand asserts a bailment as one perfecting event; the collateral was located in West Virginia at the time of the asserted bailment. Under Ingersoll-Rand's alternate theory that the equipment is "mobile", the last arguable act of perfection was Ingersoll-Rand's filing in the debtor's chief place of business state, Virginia, at which time the collateral was located in Kentucky.[4]

■ This court is of the opinion that West Virginia law, not Kentucky law, should apply in this case. UCC § 9–102 note 3 explains that:

3. UCC § 1–105 provides:
Territorial Application of the Act; Parties' Power to Choose Applicable Law
(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state.
(2) Where one of the following provisions of this Act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of law rules) so specified:
Rights of creditors against sold goods. Section 2–402.

In general this Article adopts the position, implicit in prior law, that the law of the state where the collateral is located should be the governing law, without regard to possible contacts in other jurisdictions. Thus, the applicability of the Article is by this Section stated to extend to transactions concerning 'personal property and fixtures within the jurisdiction of this state'. This 'narrow' approach, appropriate in the field of security transactions, should be contrasted with the 'broad' approach stated in Section 1–105 with reference to the applicability of the Act as a whole. Section 9–103 states special rules relating to the applicability of this Article where the collateral consists of certain types of intangibles or mobile equipment, or property which is brought into this state subject to a security interest which attached in another jurisdiction.

All the states which have any connection with the transaction here have enacted the Uniform Commercial Code. *See Kentucky Revised Statutes*, Chap. 355.1–101 *et seq.*; *Va.Code Ann.* §§ 8.1–101 *et seq.*; and *West Virginia Code* §§ 46–1–101 *et seq.* The Article 9 sections relevant to the decision in this case are similar in all three states. Therefore, following the "situs" test favored in the Code in secured transactions cases, this court shall apply the law of West Virginia to the case at bar.[5]

Applicability of the Article on Bank Deposits and Collections. Section 4–102.
Bulk transfers subject to the Article on Bulk Transfers. Section 6–102.
Applicability of the Article on Investment Securities. Section 8–106.
Perfection provisions of the Article on Secured Transactions. Section 9–103.

4. Neither party has contended that Kentucky law applies.

5. The Bankruptcy Court, as previously noted, applied Virginia law to the case at bar. Ingersoll-Rand contends that Virginia law should apply by virtue of the choice of law provision which applies to goods mobile within the meaning of UCC 9–103(3), *see* UCC 9–103(3)(b), which it attempts to invoke by arguing that the equipment is mobile. It appears to this court

## B. WHETHER THE EQUIPMENT IS MOBILE WITHIN THE MEANING OF UCC 9–103(3)

UCC § 9–103(3) states, in pertinent part: Goods that are mobile and which are of a type *normally used in more than one jurisdiction* such as motor vehicles, trailers, rolling stock, airplanes, shipping containers, road building and construction machinery and commercial harvesting machinery and the like [may be secured by the filing of the security interest in the state in which the debtor maintains its principal place of business].

(Emphasis added). Ingersoll-Rand argues that the mining equipment in question is "mobile", of a type "normally used in more than one jurisdiction," thus making a recording in Virginia sufficient to perfect its security interest without a recording in West Virginia.

The mining equipment in question is described as a SSI–4718U Hydraulic Coal Trailer. These machines are designed to aid in removing coal from deep mines; the overall frame can be reduced to a height of as low as twenty-three inches, and the equipment design allows the operator to lie down in the machine, drive back into a narrow section of a deep mine, and scoop out coal. The machine has wheels with rubber tires; presumably, from its appearance, the machine could be driven on a road, since it can be operated off batteries or off direct electrical line power. Testimony before the Bankruptcy Court indicated that the equipment was located outside of the mine when not in use; that the applicable financing statement stated that the "property will be kept at: Pike County, Kentucky"; and that at the time of bankruptcy, the equipment had been moved twice in a period of 20 months. Certain witnesses testified that this type of machine is strictly mining equipment which could not be driven upon the highway, and that the equipment was not a motor vehicle. Conversely, there was testimony that this type of equipment is frequently moved from one place to another, and that such movement was normal.

■ In determining whether the equipment is "mobile" within the meaning of the Code, "mobility" should not be measured by the ease with which an item could be moved from state to state. A typewriter, for example, which is purchased for business use could be carried to another state for use in another office. As Note 5(b) of the Official Comments to UCC § 9–103 emphasizes, "[t]he rule of subsection (3) applies to goods of a type 'normally used' in more than one jurisdiction; there is no requirement that particular goods be in fact used out of state." Conversely, goods used in more than one state are not necessarily "mobile". A typewriter is not normally used in more than one jurisdiction; it is purchased in contemplation that it will be used in a particular place. On the other hand, automobiles, trailers, airplanes and such, due to their very nature, are normally used in more than one state. *Cf. In re Dobbins,* 371 F.Supp. 141 (D.Kan.1973) (tractor truck used in contract hauling in interstate commerce); *Ray v. City Bank & Trust Co. of Natchez, Miss.,* 358 F.Supp. 630 (S.D.Ohio 1973) (oil drilling rig); *General Electric Credit Corp. v. R. A. Heintz Construction Co.,* 302 F.Supp. 958 (D.Or.1969) (large earth-moving trucks fell into one of the categories of "road bldg. equip.", "construction machinery", or "automotive equipment"); *Associates Financial Services Co., Inc. v. First National Bank of S. Central Michigan,* 82 Mich.App. 495, 266 N.E.2d 490 (1978) (bulldozer).

■ This court is of the opinion that mining equipment such as is involved in the case at bar would "normally" be taken to a particular mine to be used there for a great length of time, perhaps never to be moved. Furthermore, it is not the type of equipment which would be moved under its own power; of necessity, it would be shipped or trucked to a new location. It is not the kind of machine which one would normally

that the choice of law provision provided for cases involving mobile goods cannot be triggered by merely arguing that the goods in question are mobile.

think of as being used in more than one place.

This conclusion is supported by the opinion of the Third Circuit Court of Appeals in *In re: Dennis Mitchell Industries, Inc.*, 419 F.2d 349 (3d Cir. 1969), which is cited by both sides in furtherance of their respective positions. In *Dennis Mitchell Industries*, the court considered whether industrial hydraulic cutting machines for metal and plastic were "mobile" within the meaning of UCC § 9–103(3). In holding that the industrial equipment was not "mobile", the court stated that "goods do not fall within the purview of the statute simply because they may be readily or easily transportable from one state to another", *id.* at 358; rather, the test for mobility turns upon the type goods involved. The court found that industrial equipment is purchased on contemplation that it will be used in a particular industry and will remain in the place for which it was purchased.

Ingersoll-Rand argues that a holding that this kind of mining equipment is not "mobile" within the meaning of the statute places a great risk upon any person who may have a lien on this kind of equipment, because the lien would be lost merely by placing the equipment in a mine which extends underground into another state. This argument is without merit. Provision is made in the Code for such situations; a person has four months in which to perfect a lien in another state. Additionally, mining maps enable individuals to ascertain whether a mine extends into another state, and can accordingly record the lien where necessary. In the case at bar, Ingersoll-Rand was aware that the mining equipment had been moved. Having failed to record its lien in West Virginia within four months of the equipment being moved there, Ingersoll-Rand cannot circumvent the recording requirement by characterizing mining equipment as mobile goods.

The opinion of the Bankruptcy Court is sustained insofar as the court found that the mining equipment was not "mobile" goods.

## III. THE ISSUE OF BAILMENT

### A. WHETHER THE AMENDMENT WAS PROPER

The trustee contends that the bailment question is not properly before this court because the Bankruptcy Court's decision allowing Ingersoll-Rand to submit at the close of trial an amended complaint asserting bailment as a theory of recovery was erroneous.

■ Bankruptcy Rule 715 [6] adopts Rule 15 of the Federal Rules of Civil Procedure, which provides in pertinent part:

(a) Amendments. A party may amend his pleading once a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment ....

"The federal policy of liberality in permitting amendments to pleadings, as embodied in Rule 15, Federal Rules of Civil Procedure, is self-evident." *Davenport v. Ralph*

---

**6.** Bankruptcy Rule 715 provides:
### AMENDED AND SUPPLEMENTAL PLEADINGS
Rule 15 of the Federal Rules of Civil Procedure applies in adversary proceedings except that (1) a pleading to which no responsive pleading is permitted may be amended as a matter of course at any time within 15 days after it is served but before the date set for trial and that (2) a party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 5 days after service of the amendment pleading, whichever period may be longer, unless the court otherwise orders.

*N. Peters & Co.*, 386 F.2d 199 at 204 (4th Cir. 1967); *see Wall v. Chesapeake & O. Ry.*, 339 F.2d 434 (4th Cir. 1964). Allowance of the amendment was within the discretion of the Bankruptcy Court, and the Bankruptcy Court did not abuse its discretion in allowing the amendment. Therefore, the issue of bailment is properly before this court for review. *See* 4 Collier on Bankruptcy ¶ 727.14[4] (15th Ed. 1980).

B. WHETHER THERE WAS A BAILMENT BETWEEN CHLOE CREEK AND EASTERN RESOURCES WITHIN THE REQUIREMENTS OF UCC § 9–305

UCC § 9–305 provides in part:

A security interest in goods ... may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this title.

This statute

requires the secured party, his agent, or the bailee to have actual possession of the collateral in order to perfect his security interest. The debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves 'to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [his] collateral.' *In re Copeland*, 391 F.Supp. 134, 151 (D.Del.1975). *See also* 1 G. Gilmore, Security Interests in Personal Property § 142 (1965) p. 440; J. White & R. Summers, Handbook of the Law Under U.C.C. § 23–10 (1972).

*Heinicke Instruments Co. v. Republic Corp.*, 543 F.2d 700, 702 (9th Cir. 1976). Thus, Ingersoll-Rand's lien is perfected if Ingersoll-Rand has possession of the collateral; it is deemed to have possession if the collateral is held by a bailee who has notice of Ingersoll-Rand's interest. Therefore, the issue before the court is whether Eastern Resources held the mining equipment from Chloe Creek as a bailee, and, if so, whether Eastern Resources had knowledge of Ingersoll-Rand's lien on the mining equipment.

The facts show that Chloe Creek moved the mining equipment onto the Eastern Resources property and used the equipment to mine coal there. When Chloe Creek ceased operations, the equipment remained on the Eastern Resources property. Thereafter, Eastern Resources used the equipment to mine coal.

On 20 August 1979, in a letter written on stationery with the Ingersoll-Rand letterhead, Chloe Creek authorized Eastern Resources to deduct payments on the equipment from monies Eastern Resources owed Chloe Creek, and to transfer those payments directly to Ingersoll-Rand. The letter included a schedule of future payments, and noted that $10,379.70 should be paid to Ingersoll-Rand to bring Chloe Creek's payments of May, June, July, and August up to date. The letter further noted that Ingersoll-Rand could repossess the mining equipment if payments were not made according to schedule.

On 10 September 1979, Eastern Resources issued a check to Ingersoll-Rand in the amount suggested in the letter of 20 August. On 14 November 1979, Eastern Resources made another payment to Ingersoll-Rand in the amount of $5,649.55. On 27 February 1980, one day before the petition in Bankruptcy Court was filed, Ingersoll-Rand wrote to Chloe Creek notifying Chloe Creek of a default and advising Chloe Creek that the equipment would be repossessed and that a sale was contemplated. The equipment has remained in the possession of Eastern Resources. However, Eastern Resources has not made any further payments on the equipment.

In West Virginia, the term "bailment" imports a delivery of personal property by one person to another, in trust for the execution of a special object upon or in relation to the goods delivered, which is

beneficial to either the bailor, the bailee, or both; and, upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of them in conformity with the purpose of the trust. *Moore v. Oser*, 112 W.Va. 208, 164 S.E. 144 (1932); *Walker v. Norfolk & W. Ry. Co.*, 67 W.Va. 273, 67 S.E. 722 (1910). While a bailment is a contractual relationship, an agreement between the parties is not always necessary to create a bailment, and it may come into being by operation of law. *Barnette v. Casey*, 124 W.Va. 143, 19 S.E.2d 621 (1942).

> It has also been stated as a rule that no particular ceremony or actual meeting of minds is necessary; it is the element of lawful possession, however created, and duty to account for the thing as a property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense. In the ordinary case, the nature of the bailment requires that there be a delivery by the bailor and acceptance by the bailee.

2B Michie's Jurisprudence of Virginia, West Virginia: Bailments § 3 at 412; *see Iron City Sand & Gravel v. West Fork Towing Corp.*, 298 F.Supp. 1091 (1969), *rev'd on other grounds*, 440 F.2d 958 (4th Cir. 1971). Further, while acceptance is necessary to create a bailment, the acceptance need not be actual but may be constructive, as in a case where a person comes into possession of chattels by mistake or takes possession of goods which have been left by the owner. *See Walker v. Norfolk & W. R. Co.*, 67 W.Va. 273, 68 S.E. 722 (1910).

There is no question in the case at bar but that Eastern Resources had notice of Ingersoll-Rand's security interest in the mining equipment Eastern Resources had in its possession. Eastern Resources was notified of the security interest on or before 28 July 1979, as well as by the letter of 20 August 1979. The payments made by Eastern Resources to the plaintiff on 10 September 1979 and 14 November 1979 also establish that Eastern Resources was fully aware of the security interest held by Ingersoll-Rand. The only remaining question is whether Eastern Resources was a bailee of the mining equipment.

The mining equipment was left in the possession of Eastern Resources. The arrangement of payment by Eastern Resources to Ingersoll-Rand on Chloe Creek's obligation benefitted all three parties: Eastern Resources had use of the equipment, Ingersoll-Rand was being paid, and Chloe Creek's obligation was, in part, discharged. Under these circumstances, a contract would appear to be implied whereby Eastern Resources was holding the property for its own use, to be redelivered at some later date to Chloe Creek.

This arrangement can only be characterized as a bailment. It is not a sale; no title passed, and no monies were paid to Chloe Creek. The equipment was merely held by Eastern Resources as a bailee for Chloe Creek, with Eastern Resources using the equipment and making payments. Therefore, under the terms of UCC § 9–305, Ingersoll-Rand is deemed to be in possession of the equipment because the equipment is being held by a bailee.

Accordingly, this court is of the opinion that Ingersoll-Rand has a perfected security interest in the mining equipment. The order of the Bankruptcy Court is reversed, and judgment is entered in behalf of Ingersoll-Rand for the mining equipment or its reasonable value.