12 F.3d 205
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ORIX CREDIT ALLIANCE, INCORPORATED, Plaintiff-Appellee,
v.
VIRGINIA, N.A., formerly known as Sovran Bank, N.A.,
Defendant-Appellant.
 No. 93-1193.
 United States Court of Appeals, Fourth Circuit.
 Nov. 30, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.
 S. Miles Dumville, Hazel & Thomas, P.C., for Appellant.
 Karen Skeirik Elliot, McSweeney, Burtch & Crump, P.C., for Appellee.
 William A. Broscious, Hazel & Thomas, P.C., for Appellant.
 Richard K. Bennett, McSweeney, Burtch & Crump, P.C., for Appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 
 PER CURIAM
 OPINION
 
 1
 NationsBank of Virginia, N.A. (formerly known as Sovran Bank, N.A.) has appealed a decision by the United States District Court for the Eastern District of Virginia in which it was found that its security interests in various pieces of construction equipment were inferior to that of Orix Credit Alliance, Inc., appellee.
 
 
 2
 Both NationsBank and Orix had lent A.O. Krautz, Inc. a builder of industrial chimneys, substantial amounts of money. Krautz filed a petition for bankruptcy, and Orix, which had provided the money to purchase two cranes, repossessed them. In addition, Orix had also provided money to purchase other, related equipment, which, at the time of Krautz's bankruptcy, was possessed by NationsBank. NationsBank released the assorted equipment to Orix, but only after Orix agreed to place $200,000 in escrow.
 
 
 3
 Orix and NationsBank filed counter-motions seeking summary judgment relating to the priority of their respective security interests. The district court denied both motions, and the case was tried without a jury.
 
 
 4
 The district court then found that Orix had a superior security interest in all the disputed items, and that Orix should prevail on all amounts in dispute.
 
 
 5
 NationsBank has claimed that the district court failed to classify the secured equipment properly, that Orix failed to perfect its interest in the Cranes, that Orix had no purchase money security interest in the miscellaneous items of equipment, and that Orix improperly included unearned interest in computing its claims against the debtor.
 
 
 6
 The core issues depend on whether the district court's classification of the equipment was correct.
 
 Facts
 
 7
 Both NationsBank and Orix lent substantial sums of money to Krautz, a Virginia corporation whose chief executive office was in Hanover County, Virginia. As a result of those loans, both NationsBank and Orix asserted security interests in the following items of equipment owned by Krautz: one 250-ton crawler crane, one standard lift boom, one heavy lift attachment, one tower attachment, one 250-ton truck crane, one 40-foot boom, one tower attachment live mast, one 20-foot boom and four pendant lines, and one truck crane live mast.[1]
 
 
 8
 Both Nationsbank and Orix had substantial claims against Krautz when Krautz filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, on May 10, 1991. The bankruptcy court authorized NationsBank and Orix to exercise whatever rights they had with respect to Krautz's property. Orix then repossessed and sold the cranes, and, after placing $200,000 in escrow, repossessed and sold the other, miscellaneous equipment.
 
 
 9
 The loans were made by both litigants to Krautz over an extended period of time. NationsBank made a number of loans between 1989 and 1990, each of which was secured by "[a]ll machinery, equipment, tools ... and all other tangible personal property of [Krautz] of every nature, type and description ... together with all additions and accessions thereto ... and all similar property now owned or hereafter acquired by [Krautz]." Accompanying these loans, NationsBank filed financing statements in Virginia, and, later, in New Jersey and Massachusetts.
 
 
 10
 Orix's transactions with Krautz all involved the purchase of construction equipment. While there is a dispute about what equipment was actually covered by Orix's security interests, most simply put, Orix made two loans to Krautz, one for $1,562,273.90 and one for $1,792,952.80, which money Krautz used to buy its cranes.
 
 
 11
 At trial, Orix successfully sought to prove that its security interest was superior to that of NationsBank under the purchase money exception provided by the Uniform Commercial Code (UCC)Sec. 9-312(5).
 
 Discussion
 
 12
 NationsBank has sought over $2 million from Orix for the value of the two cranes that Orix repossessed from Krautz and then sold. It has asserted that the district court erroneously determined that Orix provided purchase money financing on all the disputed equipment and has the superior security interest. Whether the district court was correct in large measure depends on 1) whether the Crawler Crane is a single item of equipment, and 2) whether the Crawler Crane should be considered a "mobile" good. The manner in which these issues are resolved determines whether Orix met its recording obligations.[2]
 
 
 13
 The Crawler Crane Was One Item of Equipment
 
 
 14
 In part with funds borrowed from Orix, Krautz purchased a LinkBelt Crawler Crane and three lifting attachments. NationsBank has argued that the "Crawler Crane" consists of only the crane itself and the heavy duty/standard lift attachment. It would exclude from the definition of the Crawler Crane, the Tower Attachment and Heavy Lift Attachment (HLA).
 
 
 15
 The district court determined, however, that the crane and the three different lifting attachments combined to form a single piece of equipment. It determined that the attachments simply were useless, except for re-sale, unless they were joined to the crane.
 
 
 16
 On appeal, NationsBank has argued that the parts were stored in different places, that a Crawler Crane could be purchased without the HLA and Tower attachments, and that the attachments might be purchased without the simultaneous purchase of the crane.
 
 
 17
 Yet the reality seems that, in order for the crane and its attachments to be of any practical use, they must be used together. The district court was consequently not in error when it found that the Crawler Crane and the three lifting attachments formed one piece of equipment (hereinafter the "Crawler Crane").
 
 
 18
 The district court's determination that the Crawler Crane and its attachments formed one unit was proper, and led to the finding that Orix had filed its financing statements during the statutorily required period. Under Virginia law, the time limit for perfecting a purchase money security interest begins to run on the date the owner/debtor "receives possession of the collateral." Va.Code Ann. Sec. 8.9-312(4). Thus, a critical question in this case arose as to when Krautz received "possession" of the Crawler Crane.
 
 
 19
 NationsBank has contended that Krautz took "possession" on February 8, 1990, when it acquired title to the HLA, the Crawler Crane, and the Tower Attachment. NationsBank has sought to depend on the fact that the items were held by bailees for Krautz before they arrived either at Krautz's facility or at its job site. Relying on the commercial code's special rules for perfection of security interests when goods are held by bailees, NationsBank has argued that, in order to perfect, Orix should have 1) had the bailee issue a document of title in the name of the secured party; 2) given notice to the bailee of the security interest; or 3) filed a financial statement in the appropriate jurisdiction. See Va.Code. Ann. Secs. 8.9-304(3) and 8.9-305.
 
 
 20
 However, under In re Automated Bookbinding Services, Inc., 471 F.2d 546 (4th Cir.1972), the time period for filing financing statements in order to perfect a purchase money security interest in equipment begins to run when the debtor obtains "physical control" over the last part of the collateral. Id. at 552-53. The Crawler Crane and the three attachments all formed one piece of equipment for purposes of Virginia law. The heavy duty/standard lift attachment arrived in Krautz's physical possession after February 14, 1990, the Tower Attachment after February 27, 1990, the Crane Base on March 9, 1990, and the Heavy Lift Attachment after October 26, 1990. Orix filed all of its financing statements by March 5, 1990, within the 20 days of Krautz's receipt of all the component parts. Orix's filing, therefore, was timely,[3] and the district court properly found that it had met its filing burden as to time.
 
 
 21
 The Crawler Crane Was a Mobile Good under Virginia Law
 
 
 22
 NationsBank has argued that the district court erred when it determined that the Crawler Crane qualified as a "mobile good" for the purposes of Va.Code. Ann. Sec. 8.9-103(3). As a mobile good, the place of filing for perfection of a security interest is the jurisdiction in which the debtor's executive offices are located. Orix filed its financing statement in the Circuit Court for Hanover County, Virginia, the debtor's chief place of business, and with the Virginia State Corporation Commission. If the Crawler Crane was mobile, Orix fulfilled its obligation.
 
 
 23
 NationsBank has contended, however, that the district court mischaracterized the Crawler Crane as a mobile good. The reason advanced is that, since the Crawler Crane weighed 250 tons and was moved by Krautz only after it was disassembled into parts and loaded on ten trucks, the Crawler Crane cannot be considered a "mobile good." To buttress its argument, NationsBank has relied heavily on a West Virginia bankruptcy case holding that, even where construction equipment could be self-propelled over short distances, it could not be considered mobile where it was not ordinarily moved from placeto-place. See Ingersoll-Rand Financial Corp. v. Nunley, 11 B.R. 528, 532 (W.D. Va.1981).[4]
 
 
 24
 It appears that the relevant Virginia statute contemplates items such as the Crawler Crane in its special rules for the recording of mobile goods. A creditor must file in the jurisdiction of the debtor's chief place of business in order to perfect a security interest in goods that are:
 
 
 25
 mobile and which are of a type normally used in more than one jurisdiction, such as motor vehicles, trailers, rolling stock, airplanes, shipping containers, road building and construction machinery and commercial harvesting machinery and the like[.]
 
 
 26
 Va.Code. Ann. Sec. 8.9-103(3). By its terms, therefore, the Virginia statute incorporates "construction machinery," here the Crawler Crane.
 
 
 27
 Moreover, as the district court found, the Crawler Crane was of the type of equipment normally used in a number of jurisdictions. Once a single construction job is completed, it is sent to the next project. NationsBank has responded that the same can be said of cement factories, which are often built at one site, only to be torn down and constructed at another. Since a cement plant clearly is not mobile, NationsBank reasons, neither should the Crawler Crane be considered mobile simply because it is used at a number of different locations. Additionally, NationsBank has noted that the Crawler Crane commonly may be used for several months at a single location, before being moved to the next.
 
 
 28
 As the district court has urged, "common sense" is perhaps the best guide for defining the mobility of the Crawler Crane. It should be apparent to any creditor, seeking a security interest in a Crawler Crane, that such equipment is only temporarily placed at any given construction site.[5] The consequent apparent mobility stands in contrast to the mining equipment considered by the Ingersoll-Rand Court, which was "not the kind of machine which one would normally think of as being used in more than one place." Ingersoll-Rand, 11 B.R. 528, at 531-32.
 
 
 29
 The district court, therefore, was correct in finding that the Crawler Crane did constitute a "mobile good" for the purposes of Virginia law. Hence, Orix filed its financing statement in exactly the right place--Hanover County, Virginia, thereby fulfilling its recording obligations vis-a-vis NationsBank.
 
 
 30
 Orix's Documentation Contained an Adequate Description of the Collateral
 
 
 31
 NationsBank has argued that Orix's description of the collateral was insufficient to satisfy Virginia's requirement that the description must "reasonably identify what is described." Va.Code Sec. 8.9-110. NationsBank has pointed to the language in the conditional sales contract notes for the cranes, which reads:
 
 
 32
 In any jurisdiction where the Uniform Commercial Code is in effect [Krautz] grants to [Orix] a security interest in any and all property wherever located now or hereafter belonging to [Krautz] or in which [Krautz] has any interest....
 
 
 33
 NationsBank then has insisted that the description relied on by Orix in the conditional sales contract must fail because the language asserts an intent to attach all present and future property of Krautz, rather than simply the Crawler and Truck Cranes.
 
 
 34
 This argument lacks merit. We have held that the extent of a security interest may be determined by "looking to the totality of the language found in [the document]." United Virginia Bank v. B.F. Saul Real Estate Invest. Trust, 641 F.2d 185, 189 (4th Cir.1981). Noting in Saul Real Estate that "there are no magic words which create a security interest," the Fourth Circuit considered the intent of the parties and then determined whether or not the document contained "language sufficient to effectuate that intent." Id. at 189 (citation omitted).
 
 
 35
 Here the language of the conditional sales contract notes clearly demonstrates that Orix and Krautz intended Orix's loan to be secured by the cranes themselves. In the respective notes, each Crane is defined as "property" at the top of the Note where it states "the undersigned ('Buyer') hereby purchases from Seller the property described below ('the property')." A detailed "Description of the Property Purchased" follows, and finally, the document grants a security interest in any and all "property."
 
 
 36
 As to the Crawler Crane in particular, the last paragraph at the end of the description of equipment on Schedule "A" states "[t]he security interest created by this Security Agreement insofar as it relates to the above described property is a Purchase Money Security Interest with the proceeds hereof being used by Mortgagor to acquire the above described property."
 
 
 37
 The crux of NationsBank's argument depends once again on the definition of the Crawler Crane and attachments as a) single or b) multiple pieces of property. Yet the language of the documents taken as a whole adequately define the property being secured. See In re Bollinger Corp., 614 F.2d 924 (3d Cir.1980) (courts may look at all of the documents comprising the transaction to determine whether a security interest has been granted).
 
 
 38
 Also, NationsBank may not claim a priority interest in the Truck Crane, because only Orix perfected its interest with respect to the Truck Crane. The Truck Crane is a "motor vehicle" under Virginia law. See Va.Code Ann. Sec. 46.2-100. As such, a security interest in the truck crane is given priority only if it appears on the certificate of title. Va.Code Ann. Sec. 8.9-103(2). Only Orix, and not NationsBank, is noted on the Truck Crane's title.
 
 
 39
 Orix Financed Both a Replacement Live Mast and a Boom Extension to the Tower Attachment, and Orix's Interest in the Live Mast to the Truck Crane was also Superior to Any Interest of Nationsbank
 
 
 40
 The live mast added to the Crawler Crane's tower attachment was a replacement for a broken part. It was added without charge to Krautz, and so became part of the Crane before Krautz took delivery.
 
 
 41
 The boom extension to the tower attachment was included in the contract for sale of the Crawler Crane.
 
 
 42
 The live mast was a replacement for the original live mast of the Truck Crane. It was sold to Krautz, after Krautz had purchased the Truck Crane, and affixed to the Crane. Orix's contention that the live mast became part of the Truck Crane is correct, and its perfected interest in the Truck Crane reasonably covered the live mast.
 
 
 43
 NationsBank's contention that Orix has no superior interest in those several items has been based on its assertion that Orix did not finance their purchase. To reach that conclusion, however, it is necessary to ignore the manner in which the parts have been used and the way in which they became part of the principle transactions that Orix financed.
 
 
 44
 Although it only implicitly has addressed the issue, the district court correctly determined that Orix had a priority security interest in the miscellaneous parts.
 
 
 45
 The Rule of 78 does not apply in determining the balance due on the Krautz accounts
 
 
 46
 NationsBank has claimed that the Rule of 78, which reduces the amount of interest a debtor has to pay when a loan is accelerated, applies in this case, and requires Orix to pay NationsBank a portion of the proceeds from the Crawler and Truck Cranes. The specific statute, Va.Code Sec. 6.1-330.89, requires an "interest credit" when an installment loan with add-on interest is accelerated.
 
 
 47
 As the district court rightly held, however, Sec. 6.1-330.89 is not applicable to Orix's loan since Sec. 6.1-330.75 expressly limits its application to commercial lenders who loan an amount not exceeding $5,000. The statute provides:
 
 
 48
 No person shall, by way of defense or otherwise, avail himself of the provisions of this chapter, or any other section or case law relating to usury or compounding of interest to avoid or defeat the payment of interest, or any other sum, in connection with a loan made to a person or entity for business or investment purposes, provided the initial amount of the loan is $5,000 or more.
 
 
 49
 Sec. 6.1-330.75(A).
 
 
 50
 NationsBank's attempted reading of the statute, namely, that it prohibits "the use of defenses 'relating to usury or compounding of interest to avoid or defeat the payment of interest' " plainly ignores the statute's scope. By its terms, the statute applies to all "the provisions of this chapter." One of those provisions is quite clearly Sec. 6.1-330.89, the very section on which NationsBank seeks to rely.
 
 Conclusion
 
 51
 The judgment of the district court is, accordingly,
 
 
 52
 AFFIRMED.
 
 
 
 [1]
 Central to the dispute is whether two or more of these "items" formed a single piece of "equipment." For the sake of clarity, they are described here as individual units
 
 
 [2]
 The superiority of Orix's security interest in the Truck Crane is predicated on the appearance of Orix's name on the title. The miscellaneous equipment is secured through its relationship to the cranes. The district court made no comment on the security interests in the truck crane and miscellaneous equipment
 
 
 [3]
 NationsBank has raised an interesting policy argument concerning the effects of the district court's interpretation of In re Automated Bookbinding. The argument is that if the test for "possession" is physical possession by the debtor, a danger to other parties arises when the goods are temporarily in the hands of third-party bailees. However, since the Crane and the three attachments are amalgamated into one piece of equipment, the bailment of any one of them cannot change the outcome under the "possession" standard. As the district court itself underscored, actual possession by the debtor provides a useful, bright-line test
 
 
 [4]
 The equipment at issue in Ingersoll-Rand was an hydraulic coal trailer, designed to aid in the removal of coal from deep mines. Id. at 532
 
 
 [5]
 By contrast, the mining equipment in Ingersoll-Rand "would 'normally' be taken to a particular mine to be used there for a great length of time, perhaps never to be moved." 1 B.R. at 532 (emphasis added)